SIMONETTI v RINSHED-MASON COMPANY

1. PRODUCTS LIABILITY—PAINT THINNER—WARNING LABEL—STANDARD OF CARE—QUESTION OF FACT.

The adequacy of the label on defendant's drum containing paint thinner to fulfill the defendant's duty to warn potential users of the dangers of the thinner's volatility and flammability was a question of fact which the trial judge properly left to the jury for decision.

2. PRODUCTS LIABILITY—PAINT THINNER—EXPECTED USES.

A manufacturer of paint thinner should be aware that its product would be used as a cleaner.

3. JUDGMENT—SUMMARY JUDGMENT—NEGLIGENCE.

Summary judgment is, as a general rule, inappropriate in negligence actions because the reasonableness of a party's conduct under any given circumstances is almost always a question of fact for the jury, thus making the absence of a genuine issue of material fact rare.

4. NEGLIGENCE—SUMMARY JUDGMENT—DIRECTED VERDICT.

Refusing to grant defendant's motions for summary judgment and directed verdict in a negligence action was proper where the standard of care to which defendant was to be held and the proximate cause of plaintiffs' injuries were factually contested.

REFERENCES FOR POINTS IN HEADNOTES

[1] 63 Am Jur 2d, Products Liability § 53.

[1–10] Manufacturer's or seller's duty to give warning regarding product as affecting his liability for product-caused injury. 76 ALR2d 9.

[2, 5] 63 Am Jur 2d, Products Liability §§ 47–49.

[3, 4] 57 Am Jur 2d, Negligence § 6.

41 Am Jur, Pleading §§ 340–343.

[6] 22 Am Jur 2d, Damages § 276.

[7] 53 Am Jur, Trial §§ 31, 32.

[8] 4 Am Jur 2d, Appeal and Error § 509.

[9] 29 Am Jur 2d, Evidence §§ 249, 250.

[10] 31 Am Jur 2d, Expert and Opinion Evidence §§ 24, 25.

63 Am Jur 2d, Products Liability § 80.

[11, 12] 63 Am Jur 2d, Products Liability §§ 59, 79.

5. PRODUCTS LIABILITY—PAINT THINNER—WARNING LABEL—STANDARD OF CARE.

The explosive characteristic of paint thinner is not a matter of common knowledge and therefore adequate warning as to its volatility must be made by the manufacturer in order to fulfill its duty of care to potential users.

6. PLEADING—AMENDMENT—NEGLIGENCE—AD DAMNUM CLAUSE.

Allowing the plaintiffs in a negligence action to amend their pleadings on the morning of the trial to increase the *ad damnum* clause from $275,000 to $675,000 was not error where the defendant admits plaintiff's injuries were very serious, does not request a continuance, and does not otherwise demonstrate reversible prejudice nor that justice was not served by allowing the amendment (GCR 1963, 118.1).

7. WITNESSES—EXCLUSION OF WITNESS—DISCRETION.

Excluding an expert witness from testifying at trial was not an abuse of discretion where endorsement of the witness was only a few days before trial and in violation of a pretrial order to timely produce the names of witnesses.

8. APPEAL AND ERROR—EVIDENCE—ADMISSIBILITY—EXCLUSION OF WITNESS—RECORD.

An appellate court cannot pass upon the admissibility of the testimony of an expert witness who was excluded from trial where no separate record was requested nor made of his testimony.

9. EVIDENCE—ADMISSIBILITY—MATERIALITY—RELEVANCY—DISCRETION.

Admitting into evidence a warning label on a one-gallon container of paint thinner was not an abuse of discretion on the grounds of immateriality and irrelevancy even though the warning label under dispute was that attached to 55-gallon containers of the thinner, which was different than the one admitted, where the jury had been apprised of the contents of the one-gallon container warning label by a deposition which was read to the jury.

10. WITNESSES—QUALIFICATION OF EXPERT WITNESS—DISCRETION.

Striking certain testimony from the depositions of two witnesses before admission at trial was not error where a painter testified as to the chemical properties of paint thinner and a worker as to the adequacy of a label since the trial court did not abuse its

discretion in determining that the witnesses were not qualified experts on the subject matter of the testimony stricken.

11. PRODUCTS LIABILITY—PAINT THINNER—WARNING LABEL—CUSTOM OF TRADE—INSTRUCTIONS TO JURY.

Refusing to instruct the jury, as requested by defendant, that defendant had no greater duty to warn an industrial purchaser of the volatility of its paint thinner than any other manufacturer in the flammable fluids industry was not error where the court had correctly instructed the jury that noncompliance with the custom of the trade in that regard is evidence of negligence.

12. PRODUCTS LIABILITY—PAINT THINNER—WARNING LABEL—INSTRUCTION TO JURY.

Refusing to give defendant's requested instruction that the defendant had no duty to warn the plaintiff of the high volatility of its paint thinner since the product was standard and common and the plaintiff was totally familiar with its harmful and dangerous characteristics was not error because the product, as the court properly determined in its ruling on the request, was not that well known and its dangerous characteristics required warning.

Appeal from Saginaw, Joseph R. McDonald, J. Submitted Division 3 May 10, 1972, at Grand Rapids. (Docket No. 11220.) Decided June 26, 1972. Leave to appeal denied, 388 Mich 784.

Complaint by Louis Simonetti and by Virginia Simonetti against Rinshed-Mason Company for damages caused when paint thinner produced by defendant exploded, injuring Mr. Simonetti. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Cicinelli, Mossner, Majoros, Harrigan & Alexander,* for plaintiffs.

*Davidson, Chaklos, Jungerheld & Hoffman,* for defendant.

Before: R. B. BURNS, P. J., and HOLBROOK and O'HARA,* JJ.

HOLBROOK, J. This is a products liability-negligence action heard by a jury.

On September 4, 1963, plaintiff Louis Simonetti was an employee of the Baker Perkins plant in Saginaw, Michigan. He was assisting a co-employee in welding an inspection plate on a piece of machinery. The machine had been previously cleaned by the use of defendant's product, Synthetic Thinner, ER–59. When the welder arced his machine to start welding, the residue and vapors of ER–59 ignited and exploded. Plaintiff Louis Simonetti was severely and permanently injured. Plaintiffs claimed that ER–59 had a dangerously low flash point, was exceedingly flammable, and that the defendant in selling the product to Baker Perkins knew, or should have known, that it was being used for washing and cleaning machinery. The negligence claimed herein consisted of defendant's failure to adequately label the product and warn of the dangerous explosive properties of ER–59. Virginia Simonetti's action was for loss of consortium.

Defendant denied liability contending there was no carelessness, negligence or violation of duty in the manufacture and sale of its product.

The jury returned a verdict of $415,000 for Louis Simonetti, and $60,000 for his wife Virginia. Defendant has appealed.

Defendant's first claim of error is grounded upon the court's refusal to grant summary judgment or directed verdict.

Defendant asserts that reasonable minds could

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

not differ in finding there was no proof whatsoever to conclude that defendant should have anticipated or foreseen welding and product use under such circumstances. There is no evidence that the paint thinner had any defect that would make it unsafe for use in the usual way. Plaintiff and his co-workers knew of the flammable nature of the product because it was stored in a separate building with other flammable materials, there was a red cautionary label on the big drums, it was dispensed in one-gallon safety cans, used in a ventilated area where fire extinguishers and no-smoking signs were posted. Prior to the explosion, plaintiff was present at a discussion regarding the advisability of welding and was worried about the safety of welding in the presence of strong vapors, although he did nothing about his worries. In such surroundings and under such circumstances, to subject the paint thinner to a 2000° welding arc transcends ordinary or reasonable use of the product. It was foolhardy and careless and every reasonable intelligent adult would know better than to take such a chance. The trial court should have found that defendant was not negligent as a matter of law. The motions for directed verdict or summary judgment were in order and should have been granted.

Plaintiffs reply by asserting that a trial judge is almost never justified in taking a negligence case from the jury and deciding the case as a matter of law. The large 55-gallon drums in the separate building contained a small red label or shipping tag which said:

"Keep AWAY from FIRE, HEAT and OPEN-flame LIGHTS
"CAUTION

"LEAKING Packages Must Be Removed to a Safe Place

"DO NOT DROP

"This is to certify that the contents of this package are properly described by name and are packed and marked and are in proper condition for transportation according to the Regulations prescribed by the Interstate Commerce Commission

"INMONT CORP, 5935 Milford Ave, Detroit, Mich. 48210"

The label did not give any indication that the product was highly volatile or explosive. While it could be inferred that the product might be flammable under certain conditions, there was no warning that the product vapors or fumes could ignite and cause a tremendous explosion hours after the substance had been used.

Defendant should have been aware that the paint thinner was being used as a cleaner. Witness Caulton Ray, who qualified as an expert in chemistry and generally as to the manufacture of chemical products around the nation and the uses to which these products were put, clearly indicated that it was a well-known fact among chemical manufacturers that paint thinners were frequently used as a "wash". Further, Mr. Ray testified as to the sufficiency of the warning label on the subject 55-gallon drum as follows:

"*Q.* Now, back in 1963, Mr. Ray, and before, was there a basic minimum standard of conduct that chemical manufacturers, or formulators, or corporations which market chemicals, customarily followed? Was there a standard, or custom, or practice, that they customarily followed in the labeling of fluids that you have mentioned, solvents, including solvents like Rinshed-Mason ER–59, with its characteristics that you found on the test?

"*A.* Yes, there were.

"*Q.* There were. All right, and were you familiar with those standards and those customs back then in 1963?

"*A.* Yes.

"*Q.* And can—did manufacturers of these materials generally, most of them generally follow that custom?

"*A.* Well, my experience has shown that.

"*Q.* Was that standard of labeling products like this, Mr. Ray, was that standard good labeling practice, insofar as the minimum was concerned, in your opinion?

"*A.* I would say it could be acceptable. Good is a rather strong term in this sense, being a chemist.

"*Q.* But what the industry generally did was acceptable?

"*A.* Right.

"*Q.* So that you were then acquainted with the custom in that regard, upon the manufacturers of reducers or thinners, as to what warning labels were supposed to be put on their products, supposed to warn the users; is that correct?

"*A.* Yes.

"*Q.* Now, what was that labeling standard that manufacturers customarily followed in labeling of their products? What was it designed to do?

"*A.* It was designed to warn and/or caution the user as to how the material should be used, or how it should not be used.

"*Q.* All right, now that would be an instruction as to its use. Would there be any standards as to warning the consumer about the dangers of the product?

"*A.* Yes.

"*Q.* All right. Now, with respect to this kind of material, this kind of solvent with this kind of a flashpoint, Mr. Ray, were there, back in 1963, were there key phrases that were applied to materials like this that had flashpoints at four or ten degrees? Were there key phrases that were part of that custom?

"*A.* Yes.

"*Q.* All right. And were these key phrases, or key words, applied depending upon how volatile or how nonvolatile the material was?

"*A*. Yes.

"*Q*. Can you tell us now, Mr. Ray, what was that custom that was followed back in 1963 by the chemical industry and trades labeling these materials to the user?

"*A*. Well, the custom at the time was that the recommendations were based on the flashpoint of the material. If the material had a flashpoint of 20 degrees or lower, it was labeled danger, caution, extremely flammable, or vapors explosive, use in well-ventilated area, keep away from fire, flame, anything of this nature, and there was also, following that, a health hazard warning, and the next category would be if it was between 20 and 80 degrees Fahrenheit, it would say caution, flammable mixture, use in well-ventilated area, keep away from flame, and the same health hazard and warning, and then when the temperature exceeded 80 degrees, that's 80 to 150, or some temperature above that, it would say combustible, and to use in well-ventilated area, and the health warning.

"*Q*. All right. Of those three categories that you have described, where did Rinshed-Mason's fluid fall into place?

"*A*. Well, our tests showed that it fell into the area of below 20 degrees, which is the—where it says extremely flammable, explosive, vapors explosive, use in well-ventilated area.

"*Q*. And insofar as a warning that was customarily given back in 1963, what is it about this Rinshed-Mason fluid, what is the dangerous aspects of this fluid that would give you the single word danger to a person? What is it about this mixture?

"*A*. Well, the flashpoint, the volatility, that it would vaporize rapidly at room temperature.

"*Q*. It's the vapors then?

"*A*. Right, it's the vapors.

"*Q*. The warning then was customarily made at that time to tell somebody about the dangers of the vapors?

"*A*. That is correct.

"*Q*. Now, I want you to assume, Mr. Ray, that back in 1963, the Rinshed-Mason Company sold and shipped 55 gallon drums, such as you saw in that shed back on

September 5, 1963, with markings on the drums, such as you read to us here this morning in court, I want you to assume that they did that back in 1963, markings Reducer S30 ER59 S302018 B180856 414-62-362, assume that their drum was marked in that fashion back in 1963, and that attached to the top of that drum was a single, red label, similar in color, and exactly in wording as plaintiffs' exhibit number '3', which I hand you, assuming the markings that I have indicated and that paper label on top of the drum, and nothing else by way of paper labels, writings or warnings of any kind, or letters or pamphlets, or instructions that came with that material that covered it in any way, or did that drum refer to any other material in any way, assuming those facts to be true, do you have an opinion, Mr. Ray, based upon reasonable scientific certainty, as to whether this label and plaintiffs' exhibit '3', and those markings that you read off that barrel when you took your sample from there, whether that was in conformity to and met the standards and the customs and the practice of the chemical industry at that time, with respect to the adequacy and sufficiency of warning of the dangers of the product and the instructions to its use to a consumer and a user, do you have an opinion as to whether that label met those standards?

"*A*. In my opinion, it's not sufficient. It didn't meet the standards of custom and practice at that time.

"*Q*. Why not?

"*A*. Well, let me explain it this way. I have purchased many solvents and chemicals from different areas of the country, and everyone that I saw had a red label similar to this, because this is a shipping label required by the Interstate Commerce Commission. Now this is for shipping, but in most cases, you will find an additional label that's for the user, that will give some instructions as to how it should be used, or how it should not be used, and this is where you will find the remarks extremely flammable, vapors explosive, use in a well-ventilated area, keep away from fire, no smoking, and a list."

We conclude that whether the red label or tag

attached to the 55-gallon drum contained an adequate warning for users or potential users of ER–59 was a fact question which the trial judge properly left to the jury for decision.

As a general rule, summary judgment is inappropriate in negligence actions. *Gamet v Jenks,* 38 Mich App 719 (1972). This is because conformance to or violation of a standard of behavior is peculiarly within the province of a jury. Only in rare instances will it be found that no "genuine issue of fact" exists. The reasonableness of a party's conduct under any given circumstances is almost always a question for the jury. *Thompson v Essex Wire Co,* 27 Mich App 516 (1970); *Mackey v Island of Bob-Lo Co,* 39 Mich App 64 (1972).

The workmen in this case decided to do the welding. This they may not have done if the red label or tag or other outside warning advised that the residue, fumes or vapors could ignite and explode hours following product use. The trial judge properly submitted the question of the sufficiency and adequacy of the warning to the jury. On motions for summary judgment, the trial judge's only function is to determine whether a material question of fact exists. *Zamler v Smith,* 375 Mich 675 (1965); *Petrie v GRD, Inc,* 39 Mich App 619 (1972). In this case plaintiff and his co-workers decided to do the welding. It is conceivable that other workmen could make the same decision given the same warnings and circumstances. It is only where all reasonable men must agree on the question of negligence that the court can properly decide the question as one of law. *Nagy v McEachern,* 28 Mich App 439 (1970); *Brown v Page,* 39 Mich App 50 (1972). Further the claims of defendant that it did not know ER–59 was being used as a cleaner and that plaintiff

knew of the explosive nature of the product were contested and the proximate cause issue was for the jury. In the instant case, no error was committed in refusing to grant defendant's motions for summary judgment and directed verdict.

*Parsonson v Construction Equipment Co,* 386 Mich 61 (1971), cited by defendant is inapplicable. The explosive characters of gasoline are, as the case held, common knowledge. Not so with paint thinner, therefore, there was a need for adequate warning.

Defendant claims error was committed when the trial court allowed the raising of the *ad damnum* clause on the morning of the trial from $275,000 to $675,000.

The late amendment did not result in surprise or prejudice. Defendant was aware of and admitted that plaintiff's injuries were very serious. The treatment of proposed amendments is discretionary with the court. *LaBar v Cooper,* 376 Mich 401, 409 (1965). Amendments may be allowed any time when justice so requires. GCR 1963, 118.1; *Grove v Story Oldsmobile, Inc,* 31 Mich App 613, 616 (1971). Defendant did not ask for a continuance and it fails to demonstrate reversible prejudice or that justice was not served by allowing the amendment. We find no abuse of discretion.

An expert witness from Chicago, Illinois, whose name was submitted as a witness by the defendant was not allowed to testify. Defendant contends this was error. The record clearly reflects that the endorsement was only a few days before trial and was in violation of a pretrial order to timely produce the names of witnesses. Generally, the exclusion of a witness is discretionary with the trial court. Where there is noncompliance with a pretrial order resulting in the creation of a time

problem for opposing counsel, it cannot be said that the court acted unwisely or that discretion was abused. We find no such abuse on this record. Furthermore, since no separate record was requested or made, we are in no position to pass upon the admissibility of evidence which might have been offered. *Bujalski v Metzler Motor Sales Co,* 353 Mich 493 (1958); *Conlon v Dean,* 14 Mich App 415, 424 (1968).

During the course of the trial, the court permitted the introduction of a warning label as an exhibit. The label was from a one-gallon container whereas all thinner purchased by Baker Perkins was shipped in 55-gallon drums which did not contain the same label. The label was, therefore, irrelevant and immaterial according to defendant.

The exact words on the label were testified to by defendant's witness. The trial judge had discretion in determining the materiality and relevancy of the evidence. *Orquist v Montgomery Ward,* 37 Mich App 36 (1971). No palpable abuse of discretion is demonstrated on this record since the jury had already been apprised of the contents of the label. The jurors were not misled prejudicially by the acceptance of the exhibit into evidence.

Defendant contends the trial court erred in striking certain testimony from the depositions of witnesses Homer Durham and Robert Loerke.

Witness Loerke, a painter, had his testimony stricken concerning his opinion that supervision, *of which he was not a member,* kept the product in a separate place "because possibly it might explode, I suppose" and had he been there he would have advised against the welding. Among other questions and answers, witness Durham's comparison between the subject product and gasoline and his opinion as to the adequacy of defend-

ant's shipping label were deleted. Defendant claims this testimony was relevant, material and should have been admitted in the trial record. Witness Loerke, as a painter, did not qualify as an expert concerning the chemical composition and properties of ER–59. Witness Durham's comparison of the paint thinner and gasoline was covered in other trial testimony and his answers indicated that he was not an expert in the field of product labeling.

The determination of whether one qualifies as an expert witness is a matter within the discretion of the trial court, and the Court of Appeals will not interfere except to correct an abuse. *Coles v Galloway*, 7 Mich App 93 (1967); *Anderson v Lippes*, 18 Mich App 281, 285 (1969). Because these witnesses did not qualify as experts as to the subject testimony, it was properly excluded.

Defendant contends that no one is held liable to a higher degree of care than the average person in the trade or business in which he is engaged. The following instruction was requested:

"I charge you that Rinshed-Mason had no greater duty to warn an industrial purchaser of 55-gallon drums of pain *[sic]* reducer than any other manufacturer in the flammable fluid industry."

The court gave the following charge:

"If you find that defendant Rinshed-Mason did not follow the custom of the trade in its manner of labeling such warning, then I instruct you that such failure to follow the custom of the trade is evidence of negligence."

Defendant claims the instruction given imposed a higher duty on the defendant than the law requires. We do not agree. The instruction given

informed the jury that they were to weigh the evidence concerning the fairness of the label as a warning when compared with the usual custom of the flammable fluids industry. The instruction was a clear statement of applicable law. The correct instruction having been given, it was not error to refuse to give a requested instruction on the same subject. *Shirley v The Drackett Products Co,* 26 Mich App 644, 654 (1970); *Wright v Whitmire,* 31 Mich App 692, 697 (1971).

The court also refused to give defendant's requested instruction number 4 which dealt with plaintiffs' burden of proof in their claims that the accident and injury was foreseeable and failure to warn under such circumstances was negligence, and defendant had no duty to warn at all since the product was standard and common and the user was totally familiar with its harmful and dangerous characteristics.

The court in determining that the proposed instruction was improper stated:

"Now, as to the part of the instruction or request number four, which had to do with the standard and common commodity, the court reviewed, carefully, the cases cited by defense counsel. All of these cases involved cement, a ready-mix cement. Two of them were breach of implied warranty cases, which do not apply in this particular case, two were negligence cases, which would be similar to this case, and in that case, the court declaring that cement was a product that had been in common use for over 50 years, and that the dangerous part of the product, the lime product, had been known, its properties had been known for centuries, and compared this a little to electricity, which they felt was such a common commodity that this instruction should be given. In fact, in all of these cases, either the court directed a verdict for the defendant at the end of the case, or reversed a—in one case, there was a verdict for plaintiff, which was reversed. The court felt that this

did not apply in this case. *There were no cases cited dealing with synthetic reducers or thinners, as such, and from the testimony of the experts produced here in open court, it would appear that there are many, many variations of complex formulas that go to make up these products, all of different degrees of danger, volatility, and as well as flammability, and the court feels that this is not a product of which would be, even though the name itself might be common, the properties and dangers of it are not common, but are very much a matter of expertise,* and the court would not, under those conditions, follow and give the instruction requested by defendants in this case." (Emphasis supplied.)

The court's reasons for rejection are reasonably based upon the trial evidence. No error was committed. Defendant's proposed instruction is not the law in this case. The product as the court properly determined was not that well known and its dangerous characteristics required warning. For this reason, defendant's requested instruction is inapplicable and it was not error for the trial court to refuse to give it to the jury. *Elias v Hess,* 327 Mich 323 (1950); *Duncan v Strating,* 357 Mich 654, 661 (1959).

Affirmed. Costs to plaintiffs.

All concurred.