CHARLES L. HARRIS, Plaintiff-Appellant, *v.* SOLNA CORPORATION *et al.*, Defendants—(AMERICAN DRUG INDUSTRIES, INC., Defendant-Appellee.)

(No. 11989; ▮▮▮▮▮▮▮▮

Fourth District—February 14, 1974.

Arnold & Gesell, of Bloomington (Joseph H. Kelley, of counsel), for appellant.

Heyl, Royster, Voelker & Allen, of Peoria (James B. Lewis, of counsel), for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Plaintiff appeals from an order granting summary judgment for defendant, American Drug Industries, Inc.

While cleaning an offset press for his employer, plaintiff suffered injury by inhaling vapor from carbon tetrachloride. He brought suit against the manufacturer and distributor of the offset press and against American Drug as the supplier of carbon tetrachloride. Neither the manufacturer nor the distributor are concerned in this appeal.

The complaint alleged counts in products liability and negligence respectively. Each contains substantially the same allegations that there were no adequate warnings of the toxic or dangerous quality of the product, no warnings concerning the proper use of such and no adequate warning or instruction "as to the amount of ventilation required in the safe use of carbon tetrachloride".

In ruling upon the motion for summary judgment, the trial court considered the label which plaintiff asserted was upon the one-gallon jug of carbon tetrachloride, together with facts from the discovery deposition of plaintiff. The label was three inches by four inches and in addition to

a trade name and defendant's business label contained the following "CARBON TETRACHLORIDE" (in letters not less than one-fourth inch high); beneath was the word "TECHNICAL" followed by "NOT FOR PHARMACEUTICAL USE". In the center of the label was the word "POISON" in letters not less than one-fourth inch tall with a skull and crossbones on either side of that word. The specific language beneath the word "POISON" was:

"DANGER—VOLATILE SOLVENT

Use With Adequate Ventalation [sic], Avoid Contact
with Flame or Hot Surface.
WARNING—HARMFUL VAPOR
May Be Fatal if Inhaled or Swallowed
KEEP OUT OF REACH OF CHILDREN"

The complaint alleged that the injuries were incurred on July 24, 1969. Plaintiff's deposition discloses the following: In the course of plaintiff's employment, he was required to clean the carbon vanes of printing machines owned by his employer. Plaintiff had been using carbon tetrachloride to clean vanes of printing machines for Johnson Press, Inc., since 1964. He had read the label on the containers of carbon tetrachloride, although he did not read the label every time he used it. Defendant's deposition indicated that he was aware that the fumes of carbon tetrachloride were toxic and he would say that they were poisonous. In addition to the label, he had read the instruction book for the presses which advised that the fumes were toxic and that adequate ventilation was required.

On July 24, 1969, his employer owned two of these machines, which plaintiff cleaned at least once each month. In this process, he would take a one-gallon container of carbon tetrachloride from the storeroom, carry it into the room where the presses were, and pour it there. He would then take the container back to the storeroom. He would pour one-fourth to one-third of a coffee cup of carbon tetrachloride into a hole in the pumps of a machine. This would require him to kneel on the floor. While he was still pouring the liquid, the carbon tetrachloride would come out of another hole, three inches away from the first, in the form of fumes and a very small amount of liquid. He would then run the pumps on the press. Plaintiff would be an arm's length away from the second hole, and would turn his head to avoid inhaling the fumes. The actual application of the carbon tetrachloride lasted only a minute or two; however, in the cleaning of the presses by wiping with kerosene plaintiff would stay near the machines and the fumes for about a half hour.

From 1964 until 1966, plaintiff was responsible for cleaning one offset machine in a non air-conditioned room. After about 1966, he cleaned two offset presses in an air-conditioned room, and for part of the time, a press in another room.

The rooms where the offset machines are currently located measure about 30 to 40 feet by 50 to 60 feet. The plaintiff stated that while he used the carbon tetrachloride, the doors would be open and the air-conditioner would be running.

The trial court prepared a memorandum which noted the number and style of the admonitions directing caution by the user, that is, the use of the word "POISON" with a picture of a skull and crossbones; the words "Danger—Volatile Solvent"; the words "Warning—Harmful Vapor"; the words "May be Fatal if Inhaled" and the words "Use with Adequate Ventilation".

The court noted that the primary thrust of plaintiff's contention is that the direction to use with adequate ventilation did not sufficiently advise as to the type and extent of ventilation required. His position on appeal is essentially the same. As to such contention, the trial court concluded:

> "We suppose a formula might be devised in terms of cubic feet of air inhaled by the user, and in terms of units of tetrachloride in each cubic foot. We doubt that such information would have been useful to the plaintiff, or to any other average person. Carbon tetrachloride is used in industry, in the arts, and in the home. It is used in rooms and enclosures of all shapes and sizes, and under innumerably various conditions so far as the nature and availability of ventilation is concerned. When the dangers of inhalation have been forcefully stated, we know of no useful way to improve on the admonition to use the product 'with adequate ventilation'."

Plaintiff cites *Tampa Drug Co. v. Wait* (Fla. 1958), 103 S.2d 603, wherein death resulted from the inhalation of carbon tetrachloride by an inexperienced user who was cleaning floors in his home. We note that in that case the label at issue failed to mention the word "poison" or to show the skull and crossbones. There was no mention of the fact that inhaling the vapor might result in death. The label in that case warned against "prolonged breathing" of the vapor. The court felt that the issue raised was the sufficiency of the label to place a reasonable man on notice of the potentially fatal consequences of breathing the vapor. The court stated that there was a duty to warn "with a degree of intensity that would cause a reasonable man to exercise for his own safety the caution commensurate with the potential danger". Here, there

was explicit notice of the potential that death might result from inhaling the vapor in conjunction with the word "poison" and the double skull and crossbones representation.

Plaintiff also cites *Maize v. Atlantic Refining Co.*, 352 Pa. 51, 55, 41 A.2d 850, 852. There death resulted from inhaling the carbon tetrachloride contained in a household dry cleaning solvent. There was warning not to inhale the fumes but no reference was made of potential fatal consequences. In addition, the court emphasized that the trade name "Safety-Kleen" was placed in large letters on four sides of the container and "* * * was so prominently featured as to exclude from her mind [the user] that 'provident fear' which has been characterized as 'the mother of safety' ". In the cited *Twombley v. Fuller Brush Company*, 221 Md. 476, 158 A.2d 110, the plaintiff contracted a toxic hepatitis through inhaling droplets from a spray type of household solvent used to clean fabrics. The only specific warning upon the container was that contact with the spray might cause frostbite. There was no warning of poisoning from a harmful vapor or possible death from inhalation.

In *Saporito v. Purex Corp. Ltd.*, 40 Cal.2d 608, 255 P.2d 7, also cited, there was warning that the container should be kept in a cool place, but no warning that such might explode if it was not kept cool. In *Martin v. Bengue, Inc.*, 25 N.J. 359, 136 A.2d 626, there was no warning of the flammability which might result when the product impregnated plaintiff's pajamas. There the court concluded that it was a jury question whether there was a duty to warn of such flammability.

Defendant also cites *Abbott Laboratories v. Lapp*, 78 F.2d 170. There the manufacturer knew that its medical product, Lactogen, might be contaminated if coagulated. The product was designed to be injected into the bloodstream but no warning of the hazard of contamination was disclosed to the user. Similarly, in *Simonetti v. Rinshed-Mason Co.*, 41 Mich.App. 446, 200 N.W.2d 354; *Murray v. Wilson Oak Flooring Co.*, 475 F.2d 129 and *Crane v. Sears Roebuck & Co.*, 32 Cal. Rptr. 754, 218 Cal.App.2d 855, it was held that it was a jury question as to whether the manufacturers should have warned that the fumes of the products were explosive, as well as warning that they were flammable.

Upon these authorities, plaintiff argues that the question of the adequacies of the label warnings is always a jury question. In none of such cases did the label state to the user the potentially fatal qualities of the product. In substance, the labels considered in such cases did not warn in any way concerning the injury which was suffered. Here, plaintiff had used carbon tetrachloride on each of two machines at least once a month for some five years. It explicitly appears that he was aware of the contents of the warnings and that the substance possessed a harmful

poisonous vapor that might be fatal if inhaled. In effect, the label warned that the vapor should not be inhaled at all and the adequacy of the ventilation is measured by the standard of a poison that could be fatal if inhaled. The label did not suggest any safe margin of time in which the vapor could be inhaled as did some labels in the cited cases which only cautioned against prolonged or excessive breathing of the vapor.

The record shows as undisputed the warning of the poisonous quality and that any inhalation of the fumes was harmful and might be fatal. This meets the standard of a warning with a degree of intensity that would cause a reasonable man to exercise a caution commensurate with the potential dangers. Where there is no dispute upon the facts, summary judgment is proper as to both products liability and negligence cases. *Fore v. Vermeer Manufacturing Co.,* 7 Ill.App.3d 346, 287 N.E.2d 526.

The judgment is affirmed.

Affirmed.

SMITH, P. J., and SIMKINS, J., concur.