INGE SCHROEDER, Adm'x of the Estate of Harvey Schroeder, Deceased, Plaintiff-Appellant, v. REDDICK FUMIGANTS, INCORPORATED, *et al.*, Defendants-Appellees.

First District (4th Division)   Nos. 83—31, 83—204 cons.

Opinion filed November 15, 1984.

John J. Lowrey and Mary Jo Smerz, both of Law Offices of John J. Lowrey, P.C., of Chicago, for appellant.

Kurt Carlson, of Jegen & Carlson, of Glen Ellyn, for appellee Reddick Fumigants, Inc.

Donald R. Harris and William P. Suriano, both of Jenner & Block, of Chicago, for appellee Velsicol Chemical Corporation.

Raymond R. Cusack and Cornelius J. Harrington III, both of Johnson,

Cusack & Bell, Ltd., of Chicago (Thomas H. Fegan, of counsel), for appellee Mine Safety Appliances Company.

Lord, Bissell & Brook, of Chicago (C. Roy Peterson, Hugh C. Griffin, and Joan M. Engeman, of counsel), for appellee Great Lakes Chemical Corporation.

JUSTICE ROMITI delivered the opinion of the court:

This wrongful death action was brought to recover damages for the death of Harvey Schroeder, by his wife and administratrix of his estate, Inge Schroeder, under a strict liability theory in products liability. The circuit court of Cook County granted summary judgment for defendants Mine Safety Appliance Company, Reddick Fumigants, Incorporated, Velsicol Chemical Corporation, and Great Lakes Chemical Corporation.

We affirm.

Harvey Schroeder was employed by B. Heller & Company as a maintenance manager whose duties included fumigation of Heller's Bedford Park plant, in which meat cures, tenderizers, and seasonings were produced. On the afternoon of June 1, 1979, Harvey Schroeder and a co-worker, James Bergstedt, prepared to fumigate the plant. According to the deposition of Bergstedt, he and Schroeder checked their gas masks and canisters (which were designed to absorb noxious fumes) before fumigating and observed an expiration date of March 1978 on the canisters. Schroeder stated that they would have to order new canisters the following Monday. The men then fumigated the plant with methyl bromide, utilizing the masks and canisters. The next morning Schroeder reopened the plant, apparently to ventilate any remaining methyl bromide vapors. Shortly thereafter he became ill and was admitted to the hospital. He died hours later of what plaintiff has alleged to be methyl bromide intoxication.

■ The mask and canister utilized by Schroeder were supplied by defendant Mine Safety. It is plaintiff's contention that these products were unreasonably dangerous in that they were inappropriate for methyl bromide fumigation and the warnings and instructions attached to the canister were inadequate. We do not reach the merits of these contentions, because we agree with the trial court's finding that the proximate cause of Schroeder's death was his knowing use of an expired gas mask canister, a use which the defendants could not reasonably have foreseen. Although foreseeability is ordinarily a question of fact, it may be decided as a matter of law when the facts demonstrate that the plaintiff could never be entitled to recover. *Gasdiel v.*

*Federal Press Co.* (1979), 78 Ill. App. 3d 222, 396 N.E.2d 1241.

The gas mask canister at issue here bore the following message:
"DIRECTIONS FOR STORAGE use canister before _____ if seals are not broken. discard one year after removing seals (OR SOONER, IF CANISTER'S EXPENDED) seal broken _____ 19 _____."

It is undisputed by the parties that one of the blanks was filled in with the date March 1978. Thus, even assuming that this date was the one on which the seal was broken (rather than the date before which the canister was to be used), the canister would have become out of date in March 1979, well before Harvey Schroeder used it in June 1979. It is also undisputed that Schroeder saw the expiration date, explicitly commented on the need to replace the canister, and yet still utilized the expired canister in fumigation. Given these facts, the trial court was justified in granting summary judgment for defendant Mine Safety, as it could not reasonably have anticipated that its product would be used after its expiration date.

■ Defendants Reddick, Velsicol and Great Lakes were all involved in the manufacture or distribution of methyl bromide. Plaintiff contends that their product was unreasonably dangerous in that it was packaged with inadequate warnings and should have included an odor additive. We agree with the trial court's determination that the warnings on the cylinder were adequate as a matter of law. In *Harris v. Solna Corp.* (1974), 16 Ill. App. 3d 1039, 307 N.E.2d 434, the plaintiff brought an action in products liability and negligence, alleging that he suffered injury by exposure to a container of carbon tetrachloride which bore inadequate warnings. The label contained the word "poison," surrounded by two skull-and-crossbones, along with these statements: "Danger—Volatile Solvent," "Warning—Harmful Vapor," "May be Fatal if Inhaled," "Use with Adequate Ventilation." The court held that this warning was stated with a degree of intensity that would cause a reasonable man to exercise caution commensurate with the potential danger and so affirmed summary judgment for the defendant. The label on the methyl bromide cylinder in this cause contained in bold-faced type the word "DANGER" with a skull-and-crossbones on either side of the word "POISON." It also stated:

"VAPOR EXTREMELY HAZARDOUS
HIGHLY VOLATILE                    CAUSE BURNS
WARNING: Poisonous Liquid and Vapor!
Contact with liquid may produce burns. Do not breathe vapor. Wear a full-face gas mask with black canister meeting specifications of the U.S. Bureau of Mines. Do not get in eyes, on skin,

or on clothing.

\* \* \*

FIRST AID TREATMENT—ANTIDOTE

Remove victim to fresh air immediately. Keep victim lying down and warm. Give artificial respiration if breathing has stopped. Call A Physician Immediately!

HARMFUL OR FATAL, IF SWALLOWED."

Thus the user of this product was clearly warned that he was dealing with a dangerous poison that should not be breathed in and that required the use of a gas mask.

■ Plaintiff contends that in fact the mask and canister recommended in this warning should not have been used for this type of fumigation. But this allegation is without any factual foundation in the record. Plaintiff relies on the affidavit of Nathan Willen, an industrial hygienist, who stated that the mask and canister supplied by Mine Safety (which were apparently of the type described in the warning) were not "appropriate" for use with methyl bromide. The affidavit does not state that the use of this mask and canister would be unsafe. Nor does it state that the alternate types of masks which it stated were sold by Mine Safety would have been more appropriate or safer. We find that this affidavit was conclusory at best and as such failed to create a factual issue concerning the adequacy of the type of mask recommended. *Anderson "Safeway" Guard Rail Corp. v. Champaign Asphalt Co.* (1971), 131 Ill. App. 2d 924, 266 N.E.2d 414; 87 Ill. 2d R. 191(a).

■ Plaintiff has also contended that the defendants should have added an odor additive to what she contends was an odorless product so as to provide for warning to a worker of its presence in the air. But plaintiff has alleged that Harvey Schroeder was injured while wearing a gas mask. He clearly did not need any additional warning that methyl bromide was present, as he was the one who applied it. Indeed, in arguments before the trial court, counsel for plaintiff conceded that the decedent had been aware that methyl bromide was what he was using. We do not find that this contention presented a bar to summary judgment being entered for the defendants. We also find that our earlier reasoning with respect to summary judgment for defendant Mine Safety also applies to the remaining defendants. The decedent, although cognizant that he was using a dangerous poison requiring the use of a gas mask, nevertheless inexplicably chose to use a mask with a canister that he knew was expired. Neither the manufacturers and distributors of methyl bromide nor the manufacturer of the mask and canister could reasonably have anticipated this

use of their products, and thus they could not be held liable for the resulting death.

■■ Finally, plaintiff contends that the entry of summary judgment for the defendant was premature because the defendants had refused to produce certain witnesses for discovery. Had plaintiff believed that more facts needed to be determined prior to a ruling on the motions for summary judgment because of additional necessary discovery, she could have filed an affidavit in compliance with Supreme Court Rule 191(b) (87 Ill. 2d R. 191(b)), setting forth the facts to which she believed these witnesses would testify and her reasons for that belief. Having failed to do this, plaintiff cannot now complain that summary judgment was prematurely granted. *Rogers v. Robson, Masters, Ryan, Brumund & Belom* (1979), 74 Ill. App. 3d 467, 392 N.E.2d 1365, *aff'd* (1980), 81 Ill. 2d 201, 407 N.E.2d 47; *Gill v. Chicago Park District* (1980), 85 Ill. App. 3d 903, 407 N.E.2d 671.

The judgment of the trial court is affirmed.

Affirmed.

LINN, P.J., and JOHNSON, J., concur.