LASLEY v. KNISKERN.

1. ADVERSE POSSESSION — NOTORIETY OF CLAIM — EFFECT — PRESUMPTIONS—ACTUAL NOTICE.

Notoriety as to claim of title and possession is for the purpose of showing that the original owner had notice of the claim and possession and of its hostile character and is presumed to have acquiesced in the claim of the possessor; but where the original owner has actual knowledge of the adverse title and of the hostile possession thereunder, notoriety becomes immaterial, actual knowledge having taken its place.

2. SAME—HOSTILE CHARACTER OF CLAIM—TAX TITLE.

The claim of a tax title is necessarily hostile to that of the original owner.

3. SAME—SUFFICIENCY OF POSSESSION.

Where the purchaser of a void tax title upon a piece of wild land took such possession and made such use of the land as was reasonable under the circumstances, but for a period of ten years thereafter did nothing to indicate actual possession to the owner or a stranger passing over the land, he did not obtain title by adverse possession under color of title, though the owner had actual knowledge of his claim.

Error to Muskegon; Wolcott, J., presiding. Submitted January 20, 1908. (Docket No. 93.) Decided April 1, 1908.

Ejectment by S. Henry Lasley against Philip W. Kniskern. There was judgment for defendant, and plaintiff brings error. Reversed, judgment entered for plaintiff, and remanded for further proceedings under the statute.

*William Carpenter,* for appellant.

*Philip W. Kniskern* (*Thomas' Sullivan,* of counsel), in pro. per.

This is an action of ejectment and was tried before the court without a jury and findings of fact and law made. Plaintiff claims title as the original owner, and in this regard has a complete record title. Defendant claims title by adverse possession. His grantor, one Fuller, obtained tax deeds and recorded them in 1884. Defendant claims that possession of the lands was taken, and that, although his tax titles are void, the possession was under color of title, was adverse and hostile to the original owner and was continuous. The findings by the court are as follows:

" After 1876 neither Hiram Bean, who then owned the property, nor his heirs after his death, made any use of the property nor paid any taxes upon it. Hiram Bean was a nonresident, and after 1882 the plaintiff acted as his agent, and after the death of Bean the plaintiff continued as agent for the Bean estate and heirs. The Bean estate also owned another 40 acres adjoining the one in

question. On this 40 the plaintiff as agent for the Bean estate paid taxes, but did not pay the taxes on the 40 in question, because he knew or supposed that Fuller, one of the defendant's grantors, had a tax title on the land and was paying the taxes. The taxes on the land in question have been paid by the defendant under the tax title since its purchase from the State in 1884.

"The land in question is wild land and has never been cultivated or inclosed or used for any purpose except to take off the pine timber and some firewood. In 1885 Mr. Fuller, claiming under the tax title, made an agreement with one Calhoun, who owned a farm in the immediate neighborhood. Under this agreement Mr. Calhoun went into possession of the land for Mr. Fuller and removed the standing pine. He also cleaned up the down timber, and for some years supplied his family with stove wood from the premises. The pine, down timber and stove wood were removed during the years 1887, 1888 and 1889. Calhoun moved away from the neighborhood in October or November, 1889. Mr. Fuller lived in Barry county and visited the land several times each year while he owned it. In 1899 he employed William Morrison, who lived about three-quarters of a mile away, to look after it and keep off trespassers. The only actual trespass committed on the land was by Bruce Moffitt, who afterwards bought the land from Fuller, attempting to take some wood from it a short time before he made the purchase, which was prevented by Mr. Morrison. From 1889 when Calhoun moved away, until 1899 when Morrison was employed, there was no one other than Mr. Fuller engaged in looking after the land, and during that period of 10 years there is no evidence that any one cut any timber or wood on the land or did any acts on it of any kind, or made any actual use of it or committed any trespass. The land was generally known in that neighborhood as the Fuller forty.

"The tax deeds and the deed from Rogers to John J. Fuller were placed on record in December, 1884, the deed from John J. Fuller to Lee S. Fuller, in 1901, and the other conveyances in defendant's chain of title, in 1905 and 1906. Fuller and his subsequent grantees have paid the taxes since 1884.

"Fuller made such use of the land as he thought best subserved his interests, and such use was a reasonable use of the land, in the condition in which the land then was.

During this period no one seems to have questioned Mr. Fuller's rights in the premises. The acts of ownership which he exercised were open and notorious, and his claim of ownership was known to plaintiff as agent of the owners of the record title.

"I find, therefore, that for more than the statutory period the defendant has had open, notorious, exclusive and adverse possession of the land in question, under color of title, and is entitled to judgment.

GRANT,. C. J. (*after stating the facts*). The sole question for our consideration is, Do the facts found by the court below justify its conclusion that the defendant had acquired title by adverse possession? The notoriety as to claim of title and possession is for the purpose of showing that the original owner had notice of the claim and possession and of its hostile character, and will therefore be presumed to have acquiesced in the claim of the possessor. Where the original owner has actual knowledge of the adverse title and of the hostile possession thereunder, notoriety becomes immaterial, for actual knowledge takes its place. *Clark* v. *Gilbert*, 39 Conn. 94; *Dausch* v. *Crane*, 109 Mo. 323, 337.

- In *Key* v. *Jennings*, 66 Mo. 367, the court say:

"In the case before us nothing is left for presumption, as the evidence shows actual knowledge on the part of the real owner."

The claim of a tax title is necessarily hostile to that of the original owner. *Sparrow* v. *Hovey*, 44 Mich. 63. But there must be some actual possession visible to the original owner. After Mr. Calhoun moved away from the neighborhood in 1889, Mr. Fuller did nothing to indicate any actual possession. Neither the original owner nor a stranger in passing over the land could see any indications of possession. There was not even a sign against trespassing as was the case in *Whitaker* v. *Erie Shooting Club*, 102 Mich. 454.

It is not enough that a party sets up a hostile claim and that that claim is known to the original owner. He who

seeks to obtain title by adverse possession must not only have a hostile claim, but he must be able to point to a possession under it which is hostile to the original owner. We are therefore constrained to hold that the learned circuit judge was in error.

The judgment is reversed, and judgment entered for plaintiff and case remanded for further proceedings under the statute.

MONTGOMERY, OSTRANDER, HOOKER, and McALVAY, JJ., concurred.