SAMSON v SAGINAW PROFESSIONAL BUILDING, INC

OPINION OF THE COURT

1. NEGLIGENCE—DUTY—DEFINITION.

A duty is an obligation recognized by law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks.

2. NEGLIGENCE—DUTY—FACTORS.

Courts justify imposing a duty upon a defendant, the violation of which may result in liability for negligence, by balancing the societal interests involved, the severity of the risk, the burden upon defendant, the likelihood of occurrence of injury, and the relationship between the parties.

3. LANDLORD AND TENANT—NEGLIGENCE—DUTY OF LANDLORD.

A landlord who solicits tenants and their employees to occupy its premises for the purpose of producing a profit should be reasonably responsible for their safety.

4. LANDLORD AND TENANT—NEGLIGENCE—ASSAULTS—FORSEEABILITY—MENTAL PATIENTS—QUESTION OF FACT.

Whether an assault perpetrated by a mental patient with a history of violence was a reasonably forseeable consequence of a landlord's failure to discover that a tenant was treating mental patients with such histories and to take reasonable precautions was properly a question for the jury.

5. LANDLORD AND TENANT—NEGLIGENCE—ASSAULTS—MENTAL PATIENTS—DEFENSES.

The inability of a mental-health clinic's landlord to discover that

REFERENCES FOR POINTS IN HEADNOTES
[1] 57 Am Jur 2d, Negligence § 33.
[2] 57 Am Jur 2d, Negligence § 66 *et seq.*
[3] 49 Am Jur 2d, Landlord and Tenant § 761 *et seq.*
[4, 5, 8] 49 Am Jur 2d, Landlord and Tenant § 226 *et seq.*
[6, 9] 49 Am Jur 2d, Landlord and Tenant § 230 *et seq.*
[7] 58 Am Jur, Witnesses § 438 *et seq.*
[10] 30 Am Jur 2d, Evidence § 928.

a certain patient of the clinic had a history of violent conduct does not excuse the landlord from possible liability for negligence for failing to take reasonable precautions to protect other tenants where the landlord could have discovered the nature of the clinic's convalescent-leave program, the risks involved, the general nature of persons visiting the clinic, and their general propensity for violence.

6. LANDLORD AND TENANT—NEGLIGENCE—MENTAL PATIENTS—DEFENSES.

The landlord of a mental-health clinic may not rely on the decision of the Michigan Department of Mental Health to place a patient on convalescent-leave status as an excuse for its failure to take reasonable precautions to protect other tenants of the same building from the possible actions of the patients, because the placing of a patient on convalescent status does not indicate a determination by the state that the patient has recovered his sanity but only represents a test of the patient's reconciliation with society (MCLA 330.54).

7. EVIDENCE—MEDICAL RECORDS—ADMISSIBILITY—PRIVILEGE—STANDING.

A codefendant in a negligence action has no standing to challenge the admissibility of medical records concerning the defendant on the basis of the physician-patient privilege where the defendant expresses no desire to exercise the privilege himself.

DISSENT BY DANHOF, J.

8. LANDLORD AND TENANT—NEGLIGENCE—ASSAULTS—FORSEEABILITY—MENTAL PATIENTS.

*The landlord of a mental clinic should not be held liable for an assault by one of the patients on the employee of another tenant of the same building because it is not reasonably forseeable when one rents space to a clinic treating mental patients that one of the patients will assault a third person on the premises.*

9. LANDLORD AND TENANT—NEGLIGENCE—TESTS—MENTAL PATIENTS.

*A doctrine imposing liability on landlords of mental clinics for the intentional torts of the patients of the clinic should be imposed, if at all, by the Legislature rather than the courts since the effects of such a doctrine may be both far-reaching and unfortunate, and only the Legislature possesses the tools necessary for a full investigation of the problem.*

10. Evidence—Negligence—Prior Offenses—Medical Records—
   Relevance—Admissibility.

> *The testimony of a prior assault victim and medical records of a
> mental patient who assaulted the plaintiff should not be admis-
> sible in a negligence action against the landlord of the clinic
> treating the patient, where the information was not available
> to the defendant landlord and was therefore irrelevant as to
> the reasonableness of the landlord's failure to take precautions
> for the safety of other tenants of its building from the patients
> of the clinic.*

Appeal from Saginaw, Fred J. Borchard, J. Sub-
mitted Division 3 October 10, 1972, at Lansing.
(Docket No. 11925.) Decided February 20, 1973.
Leave to appeal granted, 390 Mich —.

Complaint by Carol Samson and Wendell Sam-
son against Saginaw Professional Building, Inc.,
and Donald Butzin for damages for injuries result-
ing from an assault. Judgment for plaintiffs. Sagi-
naw Professional Building, Inc., appeals. Affirmed.

*Cicinelli, Mossner, Majoros, Harrigan & Alexan-
der,* for plaintiffs.

*Plunkett, Cooney, Rutt & Peacock* (by *Jeannette
A. Paskin),* for defendant-appellant.

Before: Danhof, P. J., and Bronson and T. M.
Burns, JJ.

Bronson, J. The factual setting for the instant
appeal is concisely set forth in our Brother's sepa-
rate opinion, and its repetition is avoided. The
primary issue raised is whether a landlord is liable
for the injuries of a tenant's employee sustained
upon the premises and caused by another tenant's
mental patient on convalescent leave status. We
readily admit that our colleague's thoughtful anal-
ysis is logically appealing, but the result is unac-
ceptable. Conceding that the imposition of a duty

upon defendant[1] flows from policy considerations which are somewhat result-oriented, it is supported by sound legal principles and our understanding of developing case law. The secondary issues raised by defendant which require our consideration are whether the trial judge committed reversible error by admitting Donald Butzin's probate court records and the testimony of his prior assault victim.

Disposition of the first issue requires a determination of whether defendant owes a legal duty to the injured plaintiff. Since the relationship between the parties is tangential and the causation chain attenuated, we are placed squarely in the quagmire of *foreseeability.* Essentially, a duty is an obligation "recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks".[2] Professor William L. Prosser finds the interrelationship between negligence and risk as follows:

"Negligence is a matter of risk—that is to say, of recognizable danger of injury. It has been defined as 'conduct which involves an *unreasonably* great risk of causing damage,' or, more fully, conduct 'which falls below the standard established by law for the protection of others against *unreasonably* great risk of harm.' "[3] (Emphasis added.)

The emphasis is placed upon the unreasonable nature of the risk since all conduct involves some

[1] Since Donald Butzin did not appeal, further references to plaintiffs and defendant are to Mrs. Samson and Saginaw Professional Building, Inc., respectively, unless otherwise stated.

[2] Prosser, Torts (3d ed), § 30, p 146.

[3] *Id.,* § 31, p 148. *See, also, Clark v Dalman,* 379 Mich 251, 261 (1967), where the Court described the common-law negligence as placing an obligation upon persons "to so govern [their] actions as to not unreasonably endanger the person or property of others".

recognizable but remote risk to others and society does not require a person to guard against *all* such risks unless the circumstances justify the imposition of absolute liability.[4]

The inquiry becomes whether the risk is unreasonable under the specific circumstances with the societal value of the interest sought to be protected being the primary consideration.[5] Prosser offers forseeability as the yardstick for measuring such reasonableness as follows:

"The idea of risk necessarily involves a *recognizable* danger, based upon some knowledge of the existing facts, and some reasonable belief that harm may follow. A risk is a danger which is *apparent,* or *should be apparent,* to one in the position of the actor."[6] (Emphasis added.)

Adoption of such a foreseeability test is found in *May v Goulding,* 365 Mich 143, 152–153 (1961). *Cf. Johnston v Harris,* 387 Mich 569 (1972). Although foreseeability is at best an elusive standard, suffice it to say that "[a]s the gravity of the possible harm increases, the apparent likelihood of its occurrence need be correspondingly less".[7]

Since these fundamental concepts underlie the creation of landlord-tenant law, we seek their employment. Mere reference to a landlord's duty to maintain safe premises fails to answer the inquiry and the abundance of case law for this proposition need not be cited. We justify imposing a duty upon defendant by balancing the societal

---

[4] Current case law governing landlord-tenant relationships does not impose such absolute liability upon landlords. *Kroll v Katz,* 374 Mich 364, 373 (1965); *Powers v Huizing,* 9 Mich App 437, 441 (1968). We adopt this sound principle of law and limit the defendant's duty to reasonably foreseeable consequences.

[5] Prosser, Torts (3d ed), § 31, p 151.

[6] *Id.,* p 149.

[7] *Id.,* p 151.

interests involved, severity of the risk, burden upon defendant, likelihood of occurrence, and relationship between the parties.

The risk in the instant case is created by the mental patient's propensity for violence while visiting defendant's tenant, the Saginaw Valley Consultation Center, during convalescent leave. Defendant challenges the existence of its duty upon such facts, claiming that it possessed no actual knowledge that the patients on convalescent leave possessed a propensity for violence, had no means available to discover such knowledge, and had a right to rely upon the decision by the Michigan State Department of Public Health to place the patients on convalescent leave status.

A review of the record discloses the nature and extent of the knowledge possessed by defendant. Frederick Zingg, defendant's leasing agent, and Arrol Irish, a principal stockholder, had actual knowledge that mental patients would visit the Saginaw Consultation Center daily for treatment. The record contains evidence that Mr. Zingg and Mr. Irish received a complaint from another tenant in the building which involved the poor dress of the mental patients. Although this event was offered as the single innocuous complaint received by defendant, the record discloses a further reference to the tenants' concern. After repeated examination and cross-examination upon his deposition testimony, Mr. Zingg conceded that this complaint by females working in the building concerned their fear and apprehension regarding the patients' use of the stairs and elevators to reach the fourth floor where the center was located. These concerns should have at least placed defendant upon notice that a possible dangerous condition may exist. The common knowledge available to

defendant's officers and agents that assaults and homicides are committed by mental patients while on convalescent leave would have provided similar notice. Notwithstanding Mr. Irish's successful relationship with a mental patient on leave status and knowledge of others, the incidence of assaults and homicides committed by mental patients with a history of violent conduct has been made vividly clear to the families involved and the public at large. These occasional unfortunate events constitute the realities of life. We do not attempt to undermine the rehabilitative effort sought for such patients, but simply recognize that experiences and events occur with sufficient frequency to create a real and not an imaginary danger.

Many patients are simply mentally deficient or retarded and present no unreasonable threat to the community in which they are released. Others possessing a propensity for violence, as evidenced by prior violent conduct toward others, may present a hazard. The fact that the consultation center would be treating mental patients and the fact that those patients with a propensity to be violent present a risk created sufficient knowledge to require defendant to inquire further to determine the type of patients that would visit its building with regularity. After evaluating the competing considerations, we do not find that such inquiry created an undue burden upon defendant. The present record indicates that defendant absolutely failed to make such further inquiry and this failure may well be sufficient to support a finding of negligence.[8] Had defendant conducted such inquiry

---

[8] The trial judge appropriately instructed the jury that:

"If you find that the Saginaw Professional Building, Inc., through its officers and agents, knowing that there was to be a mental health clinic within the building, did not make *inquiry* or *adequate inquiry* as to the type of patients who would be seen at the clinic, in order to

the risk would have become sufficiently foreseeable to reveal defendant's duty to adequately protect the employees of other tenants on the premises.

The appropriate inquiry would have disclosed that the Saginaw Valley Consultation Center treated a variety of patients whose mental disorders range from deficiencies to serious and dangerous antisocial behavior. Mr. Eckes, director of the center, acknowledged receiving patients for consultation from the Ionia State Hospital. The mental disorders of such patients had resulted in criminal involvement encompassing violent conduct to others. Donald Butzin, who had been committed for stabbing another woman, was representative of a group of patients possessing such histories for violence.

The hazard created to defendant's remaining tenants becomes apparent from an understanding of the nature of convalescent leave. The Hospital Act for Mentally Diseased Persons defines convalescent leave as follows:

> "The term 'convalescent status' shall describe and include any patient *who is not discharged,* but who is permitted by the medical superintendent to live apart from the state hospital or state home under the special regulations of the medical superintendent." MCLA 330.54; MSA 14.844. (Emphasis added.)

A reading of various sections of this statute makes clear the distinction between discharge and conva-

---

determine if there would be any *danger* or *potential danger* to others from such persons, *you may find that such failure* on the part of the Saginaw Professional Building *was negligence."*

Based upon this instruction, the jury may have concluded that defendant was negligent for failing to conduct an adequate inquiry. Notwithstanding our ultimate conclusion that defendant owed a legal duty to plaintiff, defendant's absolute failure to determine whether or not an unreasonable risk existed justifies the imposition of liability upon it.

lescent status.[9] A discharge represents a determination that a patient has recovered or been restored to sanity while convalescent status represents a trial or test of the patient's reconciliation with society that precedes such determination. Since each of these procedures may be said to differ only in the degree to which the patient's future conduct can be predicted, the risk to society during convalescent leave is sufficiently unreliable to justify different treatment. Mr. Eckes characterized the convalescent leave program as "a trial visit back to the community" in which the patient's rehabilitation with society is attempted. This witness admitted that some patients for a variety of reasons failed this test and are returned to the hospitals for treatment.

The distinction between these procedures underscores the apparent risks involved. Defendant's reliance upon the State of Michigan[10] is misplaced since such trial status is neither the equivalent of a discharge nor concomitant with a cure. Defendant's further investigation would have produced facts which belie such reliance and disclosed a foreseeable risk. Concededly, defendant could not have discovered Donald Butzin's prior history of violent conduct for such records would most likely have been withheld as confidential. However, defendant could have discovered the nature of the

---

[9] *See, e.g.,* MCLA 330.39; MSA 14.829, MCLA 330.39a; MSA 14.829(1), and MCLA 330.68; MSA 14.856, MCLA 330.69; MSA 14.857.

[10] The Legislature has provided the State of Michigan with immunity for any injuries caused by mental patients paroled, discharged, or escaped from a mental institution. MCLA 330.38a; MSA 14.828(1). We question whether injuries committed by patients on convalescent leave fall within the purview of this immunity provision. If immunity does extend to convalescent status, we question the policy justifying the state's immunity during such a trial period of the patients' attempted reconciliation with society. This is not to say that the state must terminate such programs but merely fulfill its duty to society by accepting responsibility for an apparent risk rather than shifting the burden of loss to others.

convalescent leave program, risks involved, the general nature of the persons visiting the center, and their general propensity for violence.

Although our courts have not been previously confronted with this precise issue, we find that the developing case law in this area supports our imposition of a duty upon defendant. In *Hersh v Kentfield Builders, Inc,* 385 Mich 410 (1971), the Court held an employer negligent for failing to discover an employee's propensity for violence. The *Hersh* Court cited the following principle from 34 ALR2d 390, § 9, as establishing a duty upon the employer:

"[A] duty imposed upon an employer who invites the general public to his premises, and whose employees are brought into contact with the members of such public in the course of the master's business, *is that of exercising reasonable care for the safety of his customers, patrons, or other invitees."* p 412. (Emphasis added.)

The defendant landlord similarly solicits tenants and their employees to occupy its premises for the purpose of producing a profit and should be reasonably responsible for their safety. Like the employer, a landlord is in a position to protect the employees of one tenant from the visiting patients of another by conducting the appropriate inquiry and taking the appropriate precautions. It is true that a landlord may be unable to discover each visiting patient's individual propensity for violence like an employer investigating a prospective employee. However, such individualized inquiry by a landlord is not necessary, since the requisite knowledge necessary to establish a duty to maintain safe premises need not be particularized. The defendant landlord need only discover that pa-

tients with a propensity to commit violence would
be attending the Saginaw Valley Consultation
Center, not that Donald Butzin possessed such
propensities. Such generalized knowledge was suffi-
cient to give defendant notice that safety precau-
tions or indemnification was necessary.

More recently, the Court in *Johnston v Harris,*
387 Mich 569 (1972), held a landlord liable when a
tenant was attacked and robbed in a poorly
lighted, unlocked vestibule. The *Johnston* Court
relied upon several sections of the Restatement of
Torts, 2d, and concluded that the underlying ele-
ment of defendant's negligence was *foreseeability.*
Based upon these sections, the Court accepted
plaintiff's theory that:

"[I]n a high crime district it is reasonably foreseeable
that inadequate lighting and unlocked doors would
create conditions to which criminals would be attracted
to carry out their nefarious deeds." p 573.

This case indicates that the inadequate lighting
and unlocked doors do not constitute the sole focus
for determining liability; rather, the totality of the
circumstances must be considered. Certainly, if
foreseeability is tested upon the fact that the
landlord rents space to a mental clinic, it is specu-
lative and uncertain. However, if the additional
factor that some of the visiting patients possessed
a history of violence is considered, plaintiff's injury
becomes reasonably foreseeable. We do not find
defendant unreasonably burdened by a require-
ment that it inquire into the type of behavioral
problems treated by the mental clinic requesting
rental space. Since these patients were not dis-
charged, but rather on convalescent status only,
the societal risk and gravity of the potential inju-

ries were sufficiently great to diminish the quantum of foreseeability necessary.

Significantly, the *Johnston* Court cited *Liberty National Life Insurance Co v Weldon,* 267 Ala 171; 100 So 2d 696; 61 ALR2d 1346 (1957), for the proposition that:

> "[W]hether the murder of an insured child by the beneficiary aunt was *a reasonably foreseeable consequence* of issuance of a policy to one who had no insurable interest *was a jury question."* p 575. (Emphasis added.)

Similarly, the *Hersh* Court stated that:

> "Whether the employer *knew* or *should have known of Hutchinson's vicious propensities* should not be determined by any court as a matter of law, *but by the jury."* p 415. (Emphasis added.)

We find these principles applicable to the present case. Whether the assault by a mental patient with a history of violence was a reasonably foreseeable consequence of defendant's failure to discover that a tenant was treating mental patients with such histories and to take reasonable precautions therefor was a question for the jury.

We are not unaware of the vital policy considerations supporting the creation and maintenance of such consultation services. Neither do we invite their demise or encourage their rejection by this opinion. Upon discovering the foreseeable risk, defendant need not run afoul of these important policy considerations by refusing rental space to mental-health clinics. Defendant was in a position to protect the remaining tenants from the patients of a known tenant by establishing various safety precautions or seeking indemnity for resulting injuries. Since the gravity of the possible harm

was great, the requisite foreseeability need be correspondingly less. Based upon the fundamental concepts of duty and foreseeability, we find that defendant had a duty to protect plaintiff from the injuries she sustained. The question of whether defendant violated its duty upon the facts presented was properly presented to the jury for disposition, and we sustain their judgment.

Defendant's secondary issues challenging the admission of Donald Butzin's probate record and the testimony of a prior assault victim are unavailing. Defendant initially objected to this type of evidence upon the grounds that it was irrelevant and immaterial, and that defendant possessed no knowledge of the prior assault. The relevancy and materiality of proffered evidence is determined by the trial judge within his sound discretion. MCLA 768.29; MSA 28.1052; *People v Bunker,* 22 Mich App 396 (1970). This evidence exhibited and verified the type of information that existed. Although Donald Butzin's history was not specifically available to defendant, it demonstrated the fact that patients with a propensity for violence would visit the consultation center. The trial judge did not abuse his discretion by finding that such evidence was material and relevant as to defendant.

Defendant further predicates its challenge to the admitted probate records upon the physician-patient privilege[11] and the teacher-pupil privilege.[12] We find neither privilege applicable. Defendant Butzin, possessor of the privilege, expressed no desire to exercise his physician-patient privilege and defendant has no standing to request its exercise. *Cf. Gaertner v Michigan,* 385 Mich 49 (1971); *People v Sam Williams,* 39 Mich App 91 (1972).

[11] MCLA 600.2157; MSA 27A.2157.
[12] MCLA 600.2165; MSA 27A.2165.

Since the testimony regarding defendant's attempts to be readmitted to high school following the prior assault was the product of the witness's personal knowledge and revealed no confidential communications, the teacher-pupil privilege was neither at issue nor violated. *Anderson v Lavelle,* 285 Mich 194 (1938). We find no error in the admission of the challenged evidence.

Since none of the issues raised disclose reversible error, the jury verdict is affirmed.

Affirmed. Costs to plaintiffs.

T. M. BURNS, J., concurred.

DANHOF, P. J. *(dissenting).* Plaintiff Carol Samson brought this action seeking to recover damages for injuries inflicted on her by defendant Butzin. A jury found for the plaintiffs and defendant Saginaw Professional Building, Inc., has appealed. On appeal the defendant's main contention is that the trial court erred in refusing to direct a verdict. I agree, and limit my discussion to this issue and one other.

Mrs. Samson was employed as a secretary to an attorney who maintained offices on the fifth floor of the Saginaw Professional Building. On March 30, 1966, at about 10 a.m., she left her office to go to the coffee shop on the first floor. She entered the elevator and Donald Butzin also got on. When the elevator started down, Butzin pushed the emergency stop button, produced a knife, and demanded money. After taking Mrs. Samson's wallet Butzin began stabbing her with the knife. After stabbing her several times Butzin cut himself. He apparently became concerned because of the cut and restarted the elevator. When the elevator reached the ground floor, Butzin ran away.

Defendant Butzin had engaged in conduct of this

type on a previous occasion. In January of 1963 he had entered a woman's home, attempted to tie her up, and slashed her head and hand with a knife. After this Butzin was sent to a juvenile home for a few months and then released to his parents. In July of 1963 he was committed to the Traverse City State Hospital. After a year at the hospital he was released on convalescent leave, but was not permanently discharged. At the time of the incident he was an outpatient of the Saginaw Valley Consultation Center, an agency created by the state to provide outpatient care for released mental patients. The Consultation Center was located on the fourth floor of the Saginaw Professional Building.

The plaintiffs' claim against the corporation is based on the general rule of law that one who knows or should know of a person's vicious propensities and places that person in a position where he can injure a third party will be liable to the third party if an injury occurs. I cannot quarrel with the correctness of this statement, nor would I dispute the proposition that under certain circumstances a landlord could be held liable for damages caused to one tenant by the activities of another tenant. However, I do not believe the rule applies to the facts of this case. It cannot be said that the corporate defendant knew, or should have known, of Butzin's vicious propensities.

The plaintiffs stress the fact that the corporation made no inquiries of the Consultation Center regarding whether or not any of the center's patients could be regarded as dangerous. To evaluate the importance of this contention we must examine what the result of such inquiries would have been. It is clear from the record that the most that the corporation would have received was the infor-

mation that the center had patients with a prior history of assaults. Any information regarding individuals is certainly privileged and would have been withheld. Counterbalancing this knowledge is the fact, already known to the corporation, that the State of Michigan had determined that it was safe to release the patients into society. The trained professionals, who are empowered by the law of this state to make such a determination, had determined that it was safe to place defendant Butzin into society. To require the defendant corporation to disregard this determination is to require it to disregard the assurances of the State of Michigan and to require laymen to second-guess experts. Furthermore, the state was maintaining supervision over the patients and had the power to recommit them if they manifested antisocial propensities. Does not the public have the right to rely on the state to do its duty?

As an additional ground I do not believe that it is fair to say that the defendant corporation placed Butzin in a position where he could injure others. Granting that the location of the clinic in the building made it more likely that the plaintiff would come in contact with a mental patient, I do not think that the doctrine should be carried to this extent. The possible ramifications of finding liability in this case are tremendous. It is not only state-operated clinics that attract individuals like defendant Butzin. Consider the case of a private psychiatrist, an attorney, or a bail bondsman. Is it the policy of this state to make landlords reluctant to rent to these people?

Consider also the fact that psychiatrists, attorneys, and bail bondsmen do not share in the state's immunity from suit. If the landlord is liable it seems an *a fortiori* proposition that the tenant

would be liable. After all, the tenant is in a far
better position to know of his patients', clients', or
customers' propensities for viciousness. Is it the
policy of this state to encourage psychiatrists to
treat only those patients that he is absolutely sure
are nonviolent? In this age of a greatly expanded
right to counsel, is it the policy of this state to
encourage attorneys not to represent criminal de-
fendants? Is it the policy of this state to make it
more difficult for a criminal defendant to use the
services of a bail bondsman?

What the final results of a doctrine imposing
liability would be, I cannot say. However, it is
clear that they may be both far-reaching and
unfortunate. If such widespread liability is to be
imposed surely it should be imposed by the Legis-
lature, a body which possesses the tools necessary
for a full investigation of the problems.

The cases relied on by the plaintiffs are distin-
guishable. *Hersh v Kentfield Builders, Inc,* 385
Mich 410 (1971), was an action against an em-
ployer for damages caused by his employee to the
plaintiff on defendant's premises. In *Hersh* the
Supreme Court relied on *Bradley v Stevens,* 329
Mich 556 (1951). *Bradley* was also a case involving
an employer's liability. The only other authority
cited was an ALR annotation dealing with an
employer's liability for negligence in hiring. The
employer-employee cases stand on a somewhat
different footing than does the case at bar. The
employer deals directly with his employee and
thus is better able to evaluate him. In none of the
cases cited by the plaintiffs had there been a
determination that the employee was safe made by
someone on whom the defendant was entitled to
rely. In the case of an employer-employee relation-
ship, the employer has placed his stamp of ap-

proval on the employee and in a sense vouched for his character. The persons dealing with the employer have the right to rely on him not to endanger their persons or property by negligently selecting his employees. The employer not only places the active tortfeasor in a position to do wrong, he retains the right to control his actions.

In *Hersh* the assailant had been convicted of a crime and presumably imprisoned. The opinion in that case does not show whether or not he had been discharged after completion of his sentence or paroled. However, it is clear that the employer did not rely on any determination made by the Parole Board. Perhaps if the defendant had relied on a determination of the Parole Board the Court would have viewed the case differently. In any event, a parole is not as strong an indication that the individual is fit to live in society as is a discharge or conditional release from a mental institution. A person imprisoned for a crime will be entitled to release after a given time has elapsed, regardless of whether or not he is a safe risk. A release on parole represents not so much a determination that the parolee is safe as it does a determination that he is less likely to become a recidivist if he is released now than if he is released later.

Another case relied on by the plaintiffs is *Johnston v Harris,* 387 Mich 569 (1972). This case emphasizes the point that when a person is injured by an intentional tort, a person whose conduct gave the tortfeasor his opportunity is not liable unless it was reasonably foreseeable that the intentional tort would occur. I do not believe that when one rents space to a clinic treating mental patients it is reasonably foreseeable that one of them will assault a third party on the premises.

Granted that putting a mental clinic in a building will increase the amount of contact between the tenants of the building and mental patients, and thus increase the mathematical possibility of one of them being assaulted, but there are some risks that we must all run. Renting space to a physician is likely to increase the number of persons on the premises who have communicable diseases. Would the doctor and the landlord be held liable to the other tenants who get sick? Renting to a merchant who keeps large amounts of money or other valuables on hand will increase the possibility of a robbery. Would the landlord and the proprietor of the store be liable to a tenant who was injured in a holdup? Renting to people such as these is not the same as renting to Murder, Inc. or the Hell's Angels.

Reasonable foreseeability is simply what is reasonable to foresee. There is no requirement that one indulge in speculation as to the possible consequences of his acts. If this were so no one would be able to do anything. All sorts of absolutely amazing things may occur as a result of any given act. The question is not is it possible that something may happen. The question is, is there any reasonable likelihood that it will occur. The defendant corporation had no reason to expect that the plaintiff would be assaulted. It knew only that it was increasing the contact between persons receiving mental treatment and the others normally in the building. It is surely stretching things a bit to say that the defendant corporation should have anticipated that one of the persons would assault someone in the building. To require such foresight is to require the possession of the gift of prophecy.

*Johnston* was a case where the landlord knew, or should have known, that the building was loca-

ted in a high crime area. The negligence consisted of failing to provide a lock for the door and proper lighting for the hallway. The Court regarded this as an open invitation to criminals. Conditions similar to these are not present in this case.

Society must be allowed to carry out its necessary functions. If in the course of events an innocent party is injured without the fault of another, and if it is determined that the burden of loss should be shifted, it is society in general that should bear the loss. The fact that the Legislature has not seen fit to move in this direction does not justify a court placing liability on persons who could not reasonably foresee the injury. One bad rule of law does not justify another.

One further case requires some discussion. That case is *May v Goulding*, 365 Mich 143 (1961). In *May* a dissent by Justice SOURIS, but written by former Justice TALBOT SMITH before he left the Court, urged many of the considerations that we have urged in this opinion. The dissent was ignored by the majority of the Court. However, *May* is certainly distinguishable on its facts. In *May* the claimed negligence consisted of allowing a 15-year-old boy, who was on leave from a mental institution, to make use of a firearm while unsupervised. In *May* it was the boy's parents who were held liable, the persons who were in a position to know of his instability and had a duty to control him. Allowing a 15-year-old boy to make use of a firearm while unsupervised would often present a fact question on negligence even in the absence of a serious mental problem. Therefore, I do not find *May* to be controlling.

I also disagree with the majority on the question of the admissibility of the testimony of the prior assault victim and the probate records. The major-

ity concedes that this information had not been available to the defendant corporation. Before such evidence is received I would think that, as a bare minimum, a foundation should be laid by a showing that the corporation could have obtained the information that a patient with such a history existed. In the absence of such a showing the evidence is irrelevant. This information, which the corporation could not obtain, can have no bearing on the reasonableness of its actions. I believe that the prejudicial effect of this evidence is so obvious that further comment is not required.

I would reverse and remand with instructions to enter a judgment for the defendant, Saginaw Professional Building, Inc.