CAYWOOD v DEPARTMENT OF NATURAL RESOURCES

Opinion of the Court

1. Deeds—Tax Sales—Tax Deeds—Redemption—Absolute Owner-
   ships—State of Michigan.
   The state's title to land was absolute by statute where the
   property was bid in by the state at annual tax sales for five
   consecutive years and no efforts were made at redemption
   within six months of the recording of the deed taken pursuant
   to the fifth sale (1893 PA 206).

2. Deeds—Adverse Possession—Tax Deeds—Proof of Validity—
   Prima Facie Evidence—Burden of Proof.
   A trial court's determination that a tax deed was inadequate to
   withstand a plaintiff's claim of adverse possession in the ab-
   sence of proof by the state of the invalidity of the proceedings
   under which the deed was taken was error; a tax deed is prima
   facie evidence of title and the burden of proving the invalidity
   of the deed is upon the party seeking to avoid it in a direct
   proceeding.

3. Adverse Possession—State Lands—Statutes.
   There is legislation in Michigan abolishing the general rule that
   land held by the state cannot be acquired by adverse possession
   (MCLA 600.5821; MSA 27A.5821).

4. Adverse Possession—Strict Construction—Burden of Proof—
   Open Possession—Claim of Right—Periods of Possession—
   Privity of Estate—Mention of Lands.
   The doctrine of adverse possession is strictly construed, and the
   party alleging title by adverse possession must prove by clear
   and positive proof that his possession was actual, visible, open,

References for Points in Headnotes
[1, 2] 72 Am Jur 2d, State and Local Taxation §§ 973-987.
[3] 3 Am Jur 2d, Adverse Possession §§ 205-210.
[4] 3 Am Jur 2d, Adverse Possession §§ 68, 69, 129.
[5] 3 Am Jur 2d, Adverse Possession § 14.
[6] 5 Am Jur 2d, Appeal and Error §§ 968, 974, 975.
[7] 3 Am Jur 2d, Adverse Possession §§ 47-49.

notorious, exclusive, continuous, uninterrupted for the statutory period and under cover of claim of right; an adverse claimant is permitted to add his predecessor's periods of possession only if he can establish privity of estate either by mention of the disputed lands in instruments of conveyance or orally at the time of transfer.

5. ADVERSE POSSESSION—FACTS OF CASE—CHARACTER OF PREMISES—ASSUMED CONTROL—PUBLIC INDICATION.

Adverse possession is established upon the facts of each case and the character of the premises; acts of ownership which openly and publicly indicate an assumed control or use consistent with the character of the premises are sufficient.

6. APPEAL AND ERROR—COURTS—COURT RULES—FINDINGS OF FACT—RECORDS—FAILURE TO COMPLY—REMAND FOR CERTIFICATION.

A court rule requires a trial court sitting without a jury to find the facts specifically and state separately its conclusions of law; where a lower court has failed to comply with the rule the procedure for the Court of Appeals is to remand for preparation and certification of the findings of fact (GCR 1963, 517.1).

CONCURRENCE BY DANHOF, C. J.

7. ADVERSE POSSESSION—INDIVIDUALS—GOVERNMENTAL UNITS—PRESUMPTION OF NOTICE—NOTORIETY.

*The notoriety required to give rise to a rational presumption of notice of adverse possession may be greater as against a governmental unit than as against an individual.*

Appeal from Muskegon, John H. Piercey, J. Submitted June 3, 1976, at Grand Rapids. (Docket No. 25042.) Decided September 27, 1976. Leave to appeal denied, 399 Mich 845.

Complaint by Millard Caywood and others against the Michigan Department of Natural Resources and Schneider Lumber Company, Inc., seeking to quiet title to real property and to restrain the removal of timber and brush from the property and for damages for timber already removed. Judgment for plaintiffs. Defendant Department of Natural Resources appeals. Reversed and remanded.

*John B. Olsen,* for plaintiffs.

*Frank J. Kelley,* Attorney General, and *Jerome Maslowski* and *Clive D. Gemmill,* Assistants Attorney General, for the Department of Natural Resources.

Before: DANHOF, C. J., and D. E. HOLBROOK and D. L. MUNRO,* JJ.

D. E. HOLBROOK, J. On August 4, 1974, plaintiffs commenced suit in Muskegon County Circuit Court for purposes of quieting title to land along the North Branch of the Muskegon River, restraining defendants[1] from removing timber and brush, and seeking damages for the timber removed. A bench trial was had September 24, 1974. On January 30, 1975, the trial court filed its opinion, finding that (1) plaintiffs had possessed the disputed land adversely for 15 years, (2) the state's tax deed was inadequate to support its claim to a portion of the disputed land in the absence of proof that statutory conditions for perfection of title were met, and, (3) a question of adverse possession as against the state did not arise since the claimants had perfected title by adverse possession prior to the state obtaining title. Judgment was accordingly entered July 7, 1975.[2] Defendant

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Defendant Schneider Lumber Company, Inc., has not appeared in this action. Hereinafter, therefore, "defendant" will refer to the Department of Natural Resources only.

[2] We have no reason to upset the description of the disputed property which appears in the judgment order of July 7, 1975. The opinion filed January 30, 1975, called for a survey of the property to derive the exact descriptions of the parcels involved. Apparently the plaintiffs engaged the surveyor to carry out the direction of the trial court. The proceedings were proper and, in fact, the description used in the judgment as supplied by the surveyor was in many instances less than that claimed by the plaintiffs. Nevertheless, defendants objected to this survey, apparently because plaintiffs discussed the

now appeals, raising eight issues, two of which require reversal of the lower court's judgment.

Plaintiffs claim property adjacent to. five cabins along the river which they and their predecessors have allegedly occupied for at least 15 years. The property surrounding one of the cabins claimed by Millard and Marian Caywood is located entirely in Government Lot 4, Section 12, Town 10 N, Range 16 W, as is a portion of the land surrounding a cabin claimed by Duane Cottrell. The remainder of the land surrounding the Cottrell cabin and that adjacent to the other three cabins is located in Government Lots 1 and 2, Section 11, Town 10 N, Range 16 W. The state relied upon a 1925 tax deed as establishing its title to Government Lot 4. Government Lots 1 and 2 were conveyed to the state by warranty deed dated March 9, 1964.

The tax deed of the state was executed pursuant to 1893 PA 206, § 127, repealed by 1941 PA 234. At the time of the execution of the deed, 1893 PA 206, § 127; 1915 CL 4126 provided:

"Lands delinquent for taxes for any five years, where said lands have been sold and bid off to the state for the taxes of one or more of the said years, and then so held, and no application having been made to pay, purchase or redeem the said lands for said taxes and no action pending to set aside such taxes or to remove the cloud occasioned thereby, shall, within the meaning of this act, be deemed abandoned lands, unless such lands are actually occupied by the person having the record title

survey with the surveyor. We note it would be impossible for the surveyor not to talk to plaintiffs, particularly, where damage to the property had occurred through the cutting of trees on the premises by defendant lumber company. This obviously hindered the surveying process and obscured some of the boundary lines. The trial judge was apparently convinced that the survey was properly made and the record does not support any contrary claim. We also note that some of the confusion concerning the survey was apparently due to defendants' lack of cooperation in assisting in the carrying out of the court's order to accurately survey the disputed land.

thereto. Any lands delinquent for taxes for a period of five or more years, and said lands having been sold and bid in by the state and held by the state for the taxes of any of said years, and no application having been made to pay, redeem or purchase the same, and no suit pending to set aside said taxes or remove the cloud from the title occasioned thereby, shall be subject to the provisions of this section. Whenever it shall appear by the records in the auditor general's office that any lands are delinquent for taxes for five years or more and that said lands have been bid off to the state one or more times by reason of such delinquent taxes, and that the time of redemption of such sale [or] sales has expired and that no application has been made to pay, to redeem or purchase the same, and it shall appear that no action is pending in the circuit court of the county where said lands are situated to set aside the taxes or remove the cloud on the title occasioned thereby, the title to the state shall be deemed absolute in and to said lands; and it shall be the duty of the auditor general and the commissioner of the state land office to cause an examination of such lands to be made as soon as practicable, to ascertain their value and if abandoned."

See, *Grand Rapids Trust Co v Doctor,* 222 Mich 248; 192 NW 641 (1923). The redemption period then provided was the time between the sale and the first Tuesday of May of the following year. 1893 PA 206, § 74; 1915 CL 4072, presently MCLA 211.74; MSA 7.120. 1903 PA 84, § 1; 1915 CL 4161, presently MCLA 211.431; MSA 7.661, provided:

"After the expiration of 6 months from and after the time when any deed made to the state under the provisions of section 127 of Act 206 of the Public Acts of 1893, being the general tax law, and acts amendatory thereto, shall have been recorded in the office of the register of deeds for the county in which the land so deeded shall be situated, the title of the state in and to the same shall be deemed to be absolute and complete, and no suit or proceeding shall thereafter be instituted by any person claiming through the original or govern-

ment title to set aside, vacate or annul the said deed or the title derived thereunder."

In the present case, the state's title to the land was absolute at the earliest in 1925 when the property was bid in by the state for the fifth time and no efforts had been made to redeem from the tax sales of 1921–1925, or, at the latest, June 1, 1926, six months after the deed issued to the state was recorded. Suit could not be brought thereafter by those claiming under the original title nor could the title of the state be collaterally attacked. *Dean v Department of Natural Resources,* 61 Mich App 669; 233 NW2d 135 (1975), *lv granted,* 395 Mich 792 (1975). The trial court erred, therefore, in holding that the state's tax deed was inadequate to withstand plaintiffs' claims of adverse possession in the absence of proof of the invalidity of the underlying proceedings. Even in cases contesting the validity of tax deeds issued by the auditor general to private citizens, the deed is prima facie evidence of title and the burden of proving the invalidity of the deed is upon the party seeking to avoid it in a direct proceeding. *Ritter v Corkins,* 319 Mich 484; 30 NW2d 41 (1947), *Smelsey v Safety Investment Corp,* 310 Mich 686; 17 NW2d 868 (1945).

It is an often-stated rule that the statute of limitations for the recovery of real property does not run against the state, and, therefore, land held by the state cannot be acquired by adverse possession. *Young v Thendara, Inc,* 328 Mich 42, 49; 43 NW2d 58 (1950), *Staub v Tripp,* 248 Mich 45; 226 NW 667 (1929), *rev'd on other grounds, on rehearing,* 253 Mich 633; 235 NW 844 (1931), *Grand Rapids Trust Co, supra.* However, the more correctly stated rule is that this is so *in the absence of legislation to the contrary. Staub v Tripp,* 248

Mich 45, at 48; 226 NW 667 (1929). We expressly note that *Young* relied on *Staub* for its source for the above-mentioned rule. We find that in Michigan there is legislation abolishing the general rule and that land can be acquired against the state by virtue of adverse possession. MCLA 600.5821; MSA 27A.5821.[3]

Although the statute has not been directly interpreted, and indeed appears to have been ignored by bench and bar, the plain meaning of the statute would allow title by adverse possession to be acquired as against the state. An early case, *Chamberlain v Ahrens,* 55 Mich 111; 20 NW 814 (1884), recognized the injustice in allowing the state to sit on its rights while the possessor occupies, improves, and holds the land for the statutory period. The Court observed:

"Under the statutes in force when the land was bid in, the State had a title which might have been enforced before the controversy arose in 1867. It would be a perversion of all sound rules to hold that by waiting over twenty years and then selling an old tax bid, that period should not count in the possessor's favor. The State is bound by the statutes of limitations, and defendant's rights are as complete against this title as against the other." 55 Mich at 112–113.

Apparently this case allowed adverse possession claims against the state. This case has never been expressly overruled.

Certainly this is the just and reasonable result. However, *Grand Rapids Trust Co, Staub* and *Young, supra,* seem to dictate a contrary result. It is of great relevance that in none of these cases

---

[3] Formerly, 1948 CL 609.11; 1929 CL 13974; 1915 CL 12321. This section reenacts § 11 of R S 1846, ch 139, being 1857 CL 5360; 1871 CL 7147; HOW. § 8708; 1897 CL 9724, changing the 20-year limitation to 15 years.

did the Court discuss or even mention the statutory limitation on actions by the state for recovery of land or mention *Chamberlain.*

Were we to stop here, our decision would indeed be a difficult one. We have expressed statutory language which appears to allow adverse possession claims against the state. On the other hand, we have Supreme Court precedent which apparently demands the contrary result. Our inclination would be to assume that the Court had not been called upon to decide the meaning of the statute and that we would be free to find the meaning of this legislation.

Our task has been made easier by Supreme Court comment in *People v Clement,* 356 Mich 314; 96 NW2d 804 (1959).[4] In that case, the people of the state acting through the Director of the Department of Conservation brought an action against defendant for damages to personal property. Defendant successfully invoked the protection of the statute of limitations[5] for actions for injuries to person or property and actions for trespass. This statute had been expressly applied to the state by the Legislature.[6] The Court's discussion is enlightening:

"The plain language of these 2 sections clearly bars this action, brought more than 3 years after the cause of action accrued. Plaintiff's contention seems to be, however, that we should hold that the statute does not mean what it says. As authority for that position and by way of analogy, plaintiff refers to CL 1948, § 609.11 (Stat Ann § 27.603) fixing a 15-year limitation on suits

[4] *See, Real and Personal Property,* 6 Wayne L Rev 91, 102–13 (1959).

[5] Formerly, 1948 CL 609.13; MSA 27.605; presently, MCLA 600.5805; MSA 27A.5805.

[6] 1948 CL 609.28; MSA 27.620, presently, MCLA 600.5821(3); MSA 27A.5821(3).

by the State for recovery of lands. Plaintiff cites *Chamberlain v Ahrens,* 55 Mich 111, [20 NW 814 (1884)], as holding that the State is subject to this latter statute of limitations in actions concerning lands held in a proprietary capacity. While the lands there involved may have been held in such capacity, we observe that this Court took no note of that fact in holding the State bound by the statutes of limitations. Plaintiff goes on to say that that statutory 15-year limitation on actions by the State for recovery of lands does not apply to those held by the State in its sovereign capacity, citing *State v Lake St Clair Fishing & Shooting Club,* 127 Mich 580; [87 NW 117 (1901)]; *Crane v Reeder,* 21 Mich 24 (4 Am Rep 430) [1870]; *Grand Rapids Trust Co v Doctor,* 222 Mich 248; [192 NW 641 (1923)]; and *Staub v Tripp,* 248 Mich 45 [226 NW 667 (1929)]. Plaintiff concludes, in effect, that this Court having construed, in those cases, the statutory 15-year limitation on actions for recovery of lands by the State to mean something less than it says, those cases are authority for doing as much with the cited provisions relating to the 3-year limitation on personal actions by the State, by holding that that limitation does not apply to actions for trespass on lands held in a sovereign but only to those held in a proprietary capacity.

"At the outset, it is clear that the statutory provisions fixing a 3-year limitation on personal actions brought by the State do not, by express terms, evidence a legislative intent to make the distinction contended for by plaintiff. *Furthermore, in none of the above cases* cited by plaintiff is the actual holding authority for it even in suits for the recovery of lands. In the *Fishing & Shooting Club Case* the Court based its holding on the ground that the statutory period had not yet run out against the State. In *Crane v Reeder* decision turned on the holding that it was not the legislative intent that the statute of limitations should operate retrospectively against the State (p 77). In the *Grand Rapids Trust Company Case* and the *Staub Case* this Court made no more mention of a distinction to be made between lands held in a sovereign and those held in a proprietary capacity. In the latter case the Court denied application of the limitation as against the State, even though the

land involved clearly was held in a proprietary capacity
for the purpose of sale. In neither of the latter 2 cases
was mention made of the above-cited statutory 15-year
limitation on actions by the State for recovery of land.
How its provisions were avoided therein does not ap-
pear from the reasoning in the opinions." (Emphasis
supplied.) *Clement, supra,* 316–317.

We do recognize that these comments may not
have been necessary for the decision in *Clement.*
Nevertheless, the observations are appropriate,
and we hold that they are controlling. The Legisla-
ture has specifically enacted a statute of limita-
tions which requires the state to commence an
action to recover such lands within 15 years after
the right or title of the people of the state first
accrued. This the state did not do. Whether the
Courts were never called upon to interpret the
statute or expressly chose to ignore it is irrelevant.
We find the comments in *Clement* controlling and
we hold title by adverse possession can be asserted
against the state.

In order to secure title by adverse possession,
the claimant's possession must be actual, visible,
open, notorious, exclusive, continuous, uninter-
rupted for the statutory period[7] and under cover of
claim of right. *Burns v Foster,* 348 Mich 8; 81
NW2d 386 (1957), *Rose v Fuller,* 21 Mich App 172;
175 NW2d 344 (1970), *Whitehall Leather Co v
Capek,* 4 Mich App 52; 143 NW2d 779 (1966).
Whether adverse possession is established depends
upon the facts of each case and the character of
the premises. *Burns v Foster* and *Whitehall
Leather Co v Capek, supra.* Acts of ownership
which openly and publicly indicate an assumed
control or use consistent with the character of the
premises are sufficient. *Monroe v Rawlings,* 331

---

[7] MCLA 600.5801; MSA 27A.5801, MCLA 600.5821; MSA 27A.5821.

Mich 49; 49 NW2d 55 (1951), *Rose v Fuller, supra.*
The doctrine of adverse possession is strictly con-
strued. The party alleging title by adverse posses-
sion must prove the same by clear and positive
proof. *Burns v Foster* and *Rose v Fuller, supra.* An
adverse claimant is permitted to add his predeces-
sors' periods of possession if he can establish priv-
ity of estate either by mention of the disputed
lands in instruments of conveyance or orally at
the time of transfer. *Siegel v Renkiewicz Estate,*
373 Mich 421; 129 NW2d 876 (1964), *Arduino v
City of Detroit,* 249 Mich 382; 228 NW 694 (1930).
Equity cases are reviewed *de novo.* The trial
judge's findings of fact, however, will not be over-
turned or modified unless they are clearly erro-
neous or the reviewing court is convinced it would
have reached a different result had it occupied the
position of the trial court. *Roberts v Duddles,* 47
Mich App 601; 209 NW2d 720 (1973), *Ogorek v
Loisell,* 33 Mich App 245; 189 NW2d 738 (1971). In
the case at bar, the trial court's ultimate finding
that the plaintiffs adversely held the claimed prop-
erty by parol passage for the statutory period *may*
be unsupported by the record. We direct the trial
court to examine the trial record and adequately
justify his conclusions. This is particularly neces-
sary in a case such as this where adverse posses-
sion is claimed by the possession of successive
claimants who transferred interests without ade-
quate written legal descriptions.

Plaintiffs' evidence consisted largely of testi-
mony by the claimants of their use and enjoyment
of the disputed lands. There was also testimony of
prior users and testimony of those people from the
area who had long time personal knowledge of the
area and its inhabitants. The testimony was enti-
tled to be believed or disbelieved and its impor-

tance weighed by the trial judge. There were also two quitclaim deeds which were unrecorded and offered to show ownership of the land purportedly transferred.[8] Also introduced were photographs of the area showing the use thereof of the disputed lands. We also note that even the warranty deed of March 9, 1964, by which the state took title to Lots 1 and 2 referred to certain adverse claims to the property which the court determined to be referring to those cabin sites in dispute.[9] Therefore, we feel that the judgment of the court below as regards the claimants' possession as establishing that it was actual, visible, open, notorious, exclusive and continuous as required by *Burns v Foster* and *Rose v Fuller*, for the statutory period[10] could be established from the record.

However, there is also evidence to the contrary. The quitclaim deed purported to transfer "cabins" and not descriptions of parcels of land. Plaintiffs' testimony often referred to their acquisition of "cabins". Furthermore, none of the lands were fenced in and apparently others used the cabins occasionally and they were not occupied part of the year. Therefore, the court below should have

[8] The deeds introduced in the present case were witnessed and acknowledged as required by MCLA 565.8; MSA 26.527, and contained the information required by MCLA 565.201; MSA 26.1221, and therefore were subject to being recorded and were admissible into evidence according to MCLA 600.2109; MSA 27A.2109. The materiality and relevance of the proffered evidence is within the discretion of the trial court whose decision will only be overturned for an abuse thereof. *Samson v Saginaw Professional Bldg, Inc,* 44 Mich App 658; 205 NW2d 833 (1973), *aff'd,* 393 Mich 393; 224 NW2d 843 (1975), *Simonetti v Rinshed-Mason Co,* 41 Mich App 446; 200 NW2d 354 (1972).

[9] The judge's finding that the warranty deed of 1964, by which the state took title to Lots 1 and 2, which referred to "adverse possession claims, if any, on 3 or more cabin sites on the land herein conveyed" was concerning sites herein and was supported by the record. This will not be disturbed.

[10] MCLA 600.5801; MSA 27A.5801, MCLA 600.5821; MSA 27A.5821.

been more specific as to its findings of fact as to the adverse possession claim. In addition, the court below relied on *Dubois v Karazin,* 315 Mich 598; 24 NW2d 414 (1946), as allowing plaintiffs to tack on their predecessors' periods of possession to meet the required statutory period. While it is true that this is an accurate statement of the law, it requires further elaboration. The rule was more fully stated by the Supreme Court in *Siegel v Renkiewicz Estate,* 373 Mich 421, 425; 129 NW2d 876, 879 (1964):

"Likewise, it has long been the rule in Michigan that the statutory period of possession or user necessary for obtaining title by adverse possession or easement by prescription is not fulfilled by tacking successive periods of possession or user enjoyed by different persons in the absence of privity between those persons established by inclusion *by reference to the claimed property in the instruments of conveyance or by parol references at time of conveyances.*[1]

[1] *Stewart v Hunt,* 303 Mich 161; [5 NW2d 737 (1942)]; *von Meding v Strahl,* 319 Mich 598; [30 NW2d 363 (1948)]." (Emphasis supplied.)

We cannot be sure that the trial judge applied either a correct or incorrect analysis from the January 30, 1975, opinion. The facts as decided by the court could possibly establish the requisite privity. However, the facts may also be subject to a contrary finding. This question is for the trial court.

GCR 1963, 517.1 requires a trial court sitting without a jury to find the facts specifically and state separately its conclusion of law. Brief, definite, pertinent findings of fact are sufficient. In *Ray v Mason County Drain Commissioner,* 393 Mich 294, 302; 224 NW2d 883 (1975), the Supreme

Court quoting from 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 594, enumerated the requirements of the court rule:

" 'The findings of fact must include as much of the subsidiary facts as is necessary to disclose the steps by which the trial court reached its ultimate conclusion on each factual issue. The findings should be made at a level of specificity which will disclose to the reviewing court the choices made as between competing factual premises at the critical point that controls the ultimate conclusion of fact.' "

See also *Powell v Collias,* 59 Mich App 709; 229 NW2d 897 (1975). In the present case, the trial court found "the proof adduced at the hearing left no doubt in the mind of the court that all of the plaintiffs herein had owned the land in question and had possessed it adversely through parol passage of title for more than the statutory period of 15 years". The trial court's opinion is insufficient to comply with the court rule. Five separate claims were asserted. Questions were presented as to the use each of the plaintiffs made of the property, their ability to add successive periods of possession and their predecessors treatment of the land. The trial court made insufficient findings to support its ultimate conclusion that the property was adversely held for the requisite period. The procedure in a case to which the lower court has failed to comply with GCR 1963, 517.1 is to remand for the preparation and certification of findings of fact. *Ray v Mason County Drain Commissioner, supra.*

Therefore, we find that the 1925 tax deed established the state's title to the land which became absolute six months after the deed was registered. The state held title by tax deed to Government Lot 4, but title could be lost by adverse possession. We

must remand to the trial court for further proceedings, including the taking of additional testimony, if needed, and for further findings of fact, not inconsistent with this opinion.

D. L. Munro, J., concurred.

Danhof, C. J. *(concurring).* I concur with the opinion of the majority. I write only to emphasize the heavy burden the claimant here must bear.

As the opinion correctly states, the acts required to establish a claim of adverse possession vary with the character of the land. The claimant may find that more is required of him to notorize possession of remote, undeveloped property "as to which visible acts of possession are normally few and far between". 7 Powell, Real Property, § 1013, pp 713, 714.

The requirement of open, notorious and visible possession to establish adverse possession exists as a substitute for actual notice of possession to the owner of the property. Before the law will allow such a substitution, the possession must be so notorious as to raise a rational presumption of knowledge by the owner. *Doctor v Turner,* 251 Mich 175, 178; 231 NW 115 (1930), *Lasley v Kniskern,* 152 Mich 244; 115 NW 971 (1908). Stated otherwise, the possession must be such "that if the true owner remains in ignorance, it is his own fault". *Ennis v Stanley,* 346 Mich 296, 301; 78 NW2d 114 (1956).

Whether or not such a presumption is well founded must necessarily depend in part, not only on the character of the land, but as well on the character of the true owner. I submit only that greater notoriety may be required to give rise to a rational presumption of notice as against a governmental unit than as against an individual.