MONROE *v.* RAWLINGS.

1. ADVERSE POSSESSION—ACTS OF OWNERSHIP.
   Title by adverse possession may be established by acts of
   ownership of such character as openly and publicly indicate
   an assumption of control or use such as is consistent with the
   character of the premises in question.

2. SAME—WILD LAND—ACTS OF OWNERSHIP.
   Acts of defendants, holders of tax title to entire section of
   wild, undeveloped land containing scrub oak and some pine,
   not suitable for farming, but suitable for hunting and fishing
   and recreational purposes, and which they had used for such
   latter purposes every year for over 20 years by erecting and
   reerecting a hunting cabin thereon and upon which they
   had paid the taxes during such period and otherwise used
   and controlled the land in such a way as was consistent with
   the character of the premises gave them title to the entire
   section by adverse possession (CL 1948, § 609.1).

Appeal from Kalkaska; Campbell (Howard L.),
J. Submitted June 6, 1951. (Docket No. 35, Calen-
dar No. 45,139.) Decided September 5, 1951. Re-
hearing denied December 3, 1951.

Ejectment by Isabel H. Monroe against Edwin
G. Rawlings and others to test title to land. Judg-
ment for defendants. Plaintiff appeals. Affirmed.

*Frank H. Miltner,* for plaintiff.

*Charles H. Menmuir,* for defendants.

DETHMERS, J. This is ejectment, brought in 1949,
to recover possession of a section of land in Kal-

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 1 Am Jur, Adverse Possession §§ 139, 140.

kaska county. Plaintiff relies on what she claims to be an unbroken chain of title tracing back to government patent. Defendants deny that plaintiff ever had title, and claim (1) title in themselves under a tax deed, (2) title by adverse possession, and (3) that plaintiff's action is barred by CL 1948, § 609.1(2) (Stat Ann § 27.593[2]). A finding favorable to defendants on any one of these theories requires affirmance of the judgment in their favor from which plaintiff appeals. We think defendants established title by adverse possession. Accordingly, we need not pass on the other questions.

The land is wild, undeveloped, covered with scrub oak and some pine, not suitable for farming or the production of crops, but there are some deer there, and it is suitable for hunting and fishing and recreational purposes, not "worth leaving outdoors * * * unless it has some value for oil leasing purposes," but at one time pulpwood on parts of it was of some value.

In 1926, some of defendants built a hunting cabin on the land and used the premises for hunting and fishing. In 1928 they bought the tax title to the entire section for the 1924 taxes, recorded the tax deed, and in 1929 attempted service of notice to redeem upon the person whom defendants claim to have been the one then appearing to be the owner of record (and recorded a copy with sheriff's return of service), as provided in CL 1948, § 211.140 (Stat Ann 1950 Rev § 7.198), which procedure plaintiff claims to have been a nullity for failure to make service upon the proper persons. Defendants have paid the taxes on the premises for every year from 1924 until date of trial in 1949, except for the year 1945, when it was paid by an undisclosed person. After the hunting season in 1932 the cabin was destroyed and in 1933 defendants built a new one upon the premises, at a cost for materials of $300, placed it on a cement

foundation, painted it, cleared the brush and planted grass around it and erected a sign at the crossroads bearing the name of the camp. This cabin remained to the time of trial and it, together with the land, has been used by defendants every year for hunting, fishing and vacations. Defendants kept a register of camp guests which showed the visits of defendants and their guests from 1934 to 1949, indicating occupancy of the cabin by them for such purposes on an average of 6 times each year, including each of the hunting seasons. In 1939 defendants sold the pulpwood on the entire section for $2,150, the purchaser having thereafter engaged in cutting and removing it over a period of 5 years, during which time his loggers occupied temporary cabins and camps on the land visible from the road. From 1907 until 1948, when plaintiff acquired a deed to the premises, only one conveyance was recorded by plaintiff's predecessors in chain of title, which was a deed recorded shortly after the above mentioned service of notice to redeem. During the entire period from 1926 to 1949 defendants used the property as above indicated with no one challenging or questioning their use or possession thereof, nor, insofar as shown by the record, did plaintiff or her predecessors in title ever enter upon or pay any attention to the premises or assert title or right to possession, offer to pay taxes, or in any way indicate anything other than abandonment of their rights. During that time defendants sold a portion of the land to the county road commission for road purposes and executed and had recorded a number of oil leases and mortgages and also certain conveyances between themselves, all covering the land in question.

Plaintiff stresses that defendants have never improved the land, fenced it, posted it, attempted to keep off others, or lived on it. She relies on cases holding that mere payment of taxes for years, re-

moval of timber and gravel, cutting of hay, and occasional squatting on the premises, do not suffice to establish title by adverse possession, viz., *Lasley* v. *Kniskern,* 152 Mich 244; *Duck* v. *McQueen,* 263 Mich 325; *Doctor* v. *Turner,* 251 Mich 175; *McVannel* v. *Pure Oil Co.,* 262 Mich 518, and others.

In *Whitaker* v. *Erie Shooting Club,* 102 Mich 454, defendant had a tax deed to premises "valuable for little else than shooting." He occasionally cut hay on the premises, planted trees and rented the land for hunting to a hunting club which posted the premises and undertook to keep off others. In holding that defendant had acquired title by adverse possession this Court said:

"The established rule of this Court is:

" 'It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as is consistent with the character of the premises in question.' *Murray* v. *Hudson,* 65 Mich 670, 673.   *   *   *

"*Pedes possessio* is not indispensable. The land need not be fenced. Buildings are not necessary. Where the possession claimed was by cutting grass and pasturing cattle each year during the season, and planting trees, it was held to be evidence of a practically continuous, exclusive, and hostile possession. *Sauers* v. *Giddings,* 90 Mich 50. Openly and notoriously claiming and using land in the only way it could be used without fencing or cultivation was held to establish adverse possession. *Curtis* v. *Campbell,* 54 Mich 340."

In *Corby* v. *Thompson,* 196 Mich 706, this Court said:

"An examination of this record is convincing that there is abundant evidence of adverse possession on the part of the plaintiffs in this suit. The occupation of the land by the plaintiffs, the payment of the taxes, the transfer by warranty deeds, the leasing,

inventorying and listing of this property as their own, were outward acts of exclusive ownership of an unequivocal character, overt, and notorious."

Appropriate here is the following from *Burns* v. *Curran,* 282 Ill 476 (118 NE 750):

"Neither actual occupancy, cultivation nor residence is necessary to constitute actual possession of land. Where property is so situated as not to admit of permanent useful improvements, the continued claim of the party, evidenced by public acts of ownership such as he would exercise over property which he claimed in his own right and would not exercise over property which he did not claim, may constitute actual possession."

A recent expression of the applicable test is to be found in *Fractional School District No. 4 of Golden Township, Oceana County* v. *Hedlund,* 330 Mich 73, as follows:

"In order to claim title by adverse possession the acts of possession must be open and of a hostile character.

"In *Murray* v. *Hudson,* 65 Mich 670, we approved the following:

" 'To constitute possession it is not necessary that the land should be enclosed with a fence, or that the same should be cultivated or resided upon, or that buildings should be erected thereon. It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as are consistent with the character of the premises in question.' "

Application of the above leads to the conclusion that defendants acquired title by adverse possession for over 15 years consisting of such open and public use, acts of ownership and assumption of control as were consistent with the character of the premises and to which alone the land was adapted.

That the title thus acquired by defendants extends to the entire section of land in question follows from the fact that they went into possession under color and claim of title (tax deed) to the entire section and paid the taxes on the whole of it continuously thereafter. *Lang* v. *Osceola Consolidated Mining Co.,* 145 Mich 370; 1 Am Jur, Adverse Possession, §§ 201, 205. See, also, *Gardner* v. *Gardner,* 257 Mich 172.

Affirmed, with costs to defendants.

Reid, C. J., and Boyles, North, Butzel, Carr, Bushnell, and Sharpe, JJ., concurred.