## DENISON v. DEAM.

1. ADVERSE POSSESSION—ACTS OF OWNERSHIP—CHARACTER.

Acts of ownership are sufficient to establish adverse possession if they are of such a character as to openly and publicly indicate an assumed control or use such as is consistent with the character of the premises in question.

2. SAME—ACTS OF OWNERSHIP—CHARACTER.

Openly and notoriously claiming and using land in the only way it could be used without fencing or cultivation may be acts of ownership sufficient to establish adverse possession.

3. SAME—ACTS OF OWNERSHIP—QUIETING TITLE.

Acts of defendants in quiet title action in using all the land they claimed for summer living purposes, picnics, ball games, camping, boating and general outdoor use, keeping the public out and paying the taxes on the land, putting up some posts along one line and stringing a wire fence, *held*, to be sufficient to establish right by adverse possession to lands adjacent to Lake Michigan, between the waters of the lake and a lighthouse property purchased by defendants from Federal government.

Appeal from Allegan; Smith (Raymond L.), J. Submitted Division 3 April 4, 1967, at Grand Rapids. (Docket No. 1,807.)    Decided November 29, 1967. Leave to appeal denied February 13, 1968.   See 380 Mich 757.

Bill of complaint by Frank A. Denison and Gertrude W. Denison, his wife, against Arthur F. Deam

REFERENCES FOR POINTS IN HEADNOTES

[1, 3]  3 Am Jur 2d, Adverse Possession § 19 *et seq.*
[2]  3 Am Jur 2d, Adverse Possession §§ 47-49.

and Thyra Deam, his wife, to quiet title to land, and to enjoin trespass. Cross-bill by defendants against plaintiff to quiet title to same lands in defendants. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Hoffman, McDonald & Hoffman,* for plaintiffs.

*Orton & Tooman,* for defendants.

BURNS, P. J. Plaintiffs filed a bill of complaint against the defendants, alleging title to certain land situated in the township of Saugatuck, Allegan county, Michigan, and asking the court to quiet title to said land and enjoin the defendants from trespassing on the land.

Defendants filed a cross-bill of complaint claiming title to the land by virtue of a deed from the United States government and by adverse possession. The trial court awarded the following described property (the major part of the land in dispute) to the defendants:

"Premises situate and being in the township of Saugatuck, county of Allegan, State of Michigan, described as follows, to wit:

"Beginning at a point 883.25 feet north, and 415 feet east of the southwest corner of section 4, town 3 north, range 16 west, thence south 540 feet, thence west to the water's edge of Lake Michigan, this being a point 343.25 feet north of the north line of section 8, town 3 north, range 16 west, thence northerly along the water's edge of Lake Michigan to a point due west of the place of beginning, thence east to the place of beginning."

Plaintiffs have appealed this judgment on 3 grounds, only one of which is pertinent and may be stated as follows:

Was there sufficient evidence for the court to award the disputed land to defendants on the basis of the defendants' adverse possession?

In 1838, Horace Comstock conveyed to the United States, lots 10 to 18, inclusive, of block 27 of the village plat of Kalamazoo Harbor, being part of government lot 10. The plat was never recorded and the original plat was lost. To the date of trial the United States government was not sure of the exact boundaries of this site.

The same year as the Comstock conveyance the government constructed a lighthouse situated on the north bank of the Kalamazoo river near Lake Michigan—supposedly the property described in said conveyance. In 1859, due to erosion by the water, this lighthouse was destroyed and a second lighthouse was erected approximately 175 feet northeast of the original location. Between 1870 and 1875 extensive pilings and wooden piers were constructed along the north and south banks of the Kalamazoo river and a harbor light was installed on the south pier. The United States government in approximately 1906 constructed a new harbor to the north and changed the course of the Kalamazoo river to flow through this new harbor. Thereafter, the old mouth of the Kalamazoo river became filled with sand and was closed to Lake Michigan.

In 1935 the defendants leased the lighthouse reservation from the United States government for a summer residence and in 1937 purchased it. The deed included all land acquired by the Government through adverse possession, accretion, or reliction.

In 1952, David Bennett, plaintiffs' predecessor in title, brought suit against the defendants to quiet title to the land involved in this suit. That suit was dismissed for lack of progress in 1956. In 1955 the plaintiffs purchased government lot 10 from the

Bennett estate. The plaintiffs instituted the suit involved in this appeal in 1962. The trial court found as follows:

"Defendants claim title to all the land to the west to the shoreline of Lake Michigan by virtue of accretion and adverse possession and all the land to the south to the center of the old Kalamazoo river bed by virtue of accretion and adverse possession. Their north and east lines do not appear to be in dispute.

"The testimony is clear to the court that defendants have title to the thread of the river to the south by virtue of adverse possession. The erection of the slab piers about 1870 and their maintenance thereafter as long as the harbor mouth remained in its original location sufficiently established title in the United States Government by adverse possession to any lands that lay between the lighthouse and the thread of the river. * * *

"The use by the Government of the land to the west of the first and second lighthouses is not so clear. Exhibit 114, an 1856 Government map, shows a beacon on the shoreline of the intersection of the north bank of the river and Lake Michigan. In all probability it remained there as part of the Government installations until replaced by the pier lights sometime after 1870. Certainly this beacon needed maintenance and it can be presumed that access thereto was over the land to the west of the lighthouse. But as to the extent of the use of the land to the west and as far north to the north boundary extended to Lake Michigan we are left to conjecture until 1935 when the Deams possessed the land by virtue of their lease from the United States Government.

"*From the Deams we learn that since 1935, they used all the land they claimed for summer living purposes, picnics, ball games, camping, boating and general outdoor use. They kept the public out and*

*paid the taxes thereon.\** *In 1945, they put up some*
*posts along the north line and in 1950, strung up*
*some wire which an agent for the Bennetts tore down*
*in part in April of 1951.*

"No one interfered with their possession of the
land except for the partial removal of some of the
wire fencing and for the filing of the suit in 1952.
This suit was dismissed for lack of progress in
1956. In 1962, this suit [the present] was filed and
heard in 1964. Their possession was consistent with
the character of the property. Plaintiffs' predeces-
sors in title lived to the north and were in a position
to observe any activity on the property in question.
In the opinion of the court, defendants were in
actual, continued, visible, notorious, distinct and
hostile possession of the questioned property for up-
wards of 15 years prior to this suit. In the opinion
of the court, defendants have affirmatively estab-
lished their title to the lands described in the plead-
ings and briefs except as otherwise determined in
this opinion." (Emphasis supplied.)

The Supreme Court set forth criteria for deter-
mining adverse possession of open, wild lands in
*Monroe* v. *Rawlings* (1951), 331 Mich 49, stating
on page 52:

"In *Whitaker* v. *Erie Shooting Club* (1894), 102
Mich 454, defendant had a tax deed to premises
'valuable for little else than shooting.' He occasion-
ally cut hay on the premises, planted trees and

---

\* This opinion was amended to conform to the proofs, the court
stating in its amendment to finding of facts:

"The court takes judicial notice of the records of the Allegan
county treasurer, from which it appears that defendants, from the
time of acquiring their deed to the lighthouse reservation property to
the present time, have paid taxes upon the following description, to-
wit:

"Kalamazoo lighthouse reservation secs 4 & 5 T3N R16W being
part of government lot 10,

"and also that plaintiffs and their predecessors in title down to
the present time have paid taxes upon the following description, to-
wit:

"Govt lot 10 ex Kalamazoo lighthouse reservation sec 4 T3N R16W,
30.27A."

rented the land for hunting to a hunting club which posted the premises and undertook to keep off others. In holding that defendant had acquired title by adverse possession this Court said:

" 'The established rule of this Court is:

" ' "It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as is consistent with the character of the premises in question." *Murray* v. *Hudson* (1887), 65 Mich 670, 673. * * *

" ' *Pedes possessio* is not indispensable. The land need not be fenced. Buildings are not necessary. Where the possession claimed was by cutting grass and pasturing cattle each year during the season, and planting trees, it was held to be evidence of a practically continuous, exclusive, and hostile possession. *Sauers* v. *Giddings* (1892), 90 Mich 50. Openly and notoriously claiming and using land in the only way it could be used without fencing or cultivation was held to establish adverse possession. *Curtis* v. *Campbell* (1884), 54 Mich 340.' "

And, also on page 53:

" ' "To constitute possession it is not necessary that the land should be enclosed with a fence, or that the same should be cultivated or resided upon, or that buildings should be erected thereon. It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as are consistent with the character of the premises in question." ' "

In our opinion defendants have shown that their acts of ownership are consistent with the character of the premises in question, and therefore they have established their right to the land by adverse possession.

Judgment affirmed. Costs to appellees.

HOLBROOK and R. M. RYAN, JJ., concurred.