*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATHEW VIVONA,

        Plaintiff-Appellee,

v

LIJO ANTONY and MAYOLA ANTONY,

        Defendants-Appellants,

and

LAKE MICHIGAN CREDIT UNION and
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS,

        Defendants.

UNPUBLISHED
October 17, 2025
2:19 PM

No. 370870
Oakland Circuit Court
LC No. 2023-198837-CH

Before: FEENEY, P.J., and BORRELLO and BAZZI, JJ.

PER CURIAM.

Defendants Lijo Antony and Mayola Antony appeal by right the trial court's order granting plaintiff's motion for summary disposition, denying defendants' motion for summary disposition, and entering judgment in favor of plaintiff regarding title to a disputed strip of real property that lies between the parties' respective properties.[1] For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This real property dispute between neighboring property owners involves a strip of land that borders the southern edge of plaintiff's property and, conversely, the northern edge of

---

[1] Defendants Lake Michigan Credit Union and Mortgage Electronic Registration Systems are not parties to this appeal and did not actively participate in the proceedings below. Accordingly, unless otherwise stated, our use of the term "defendants" in this opinion refers to Lijo and Mayola Antony collectively.

defendants' property (the Disputed Property). A portion of plaintiff's garage is situated within the Disputed Property. Although it is somewhat unclear from the record, it appears that a portion of plaintiff's driveway or a "turnaround" was also located within the Disputed Property. The southern edge of the Disputed Property is defined by utility poles.

In 1997, plaintiff purchased real property located at 5151 Brewster, in Oakland Township, Michigan. In his deposition, plaintiff testified that his predecessor in interest told him that the garage might be partially located on the neighboring property. Plaintiff averred[2] that he obtained a mortgage survey in 1997 that showed that the parcel he purchased included the Disputed Property and that the driveway within the Disputed Property already existed. Plaintiff testified in his deposition that the mortgage survey showed that his garage, driveway, and turnaround were on his property. The building permit application from when the garage was built in 1971 showed that the garage was supposed to be built 20 feet from the side lot line. In 2000, plaintiff constructed a new home on the property after demolishing the existing home, but he left the pre-existing garage intact. He appeared to claim that as part of this building process, there was a survey conducted by the township showing where his lot line was and that the Disputed Property was part of plaintiff's parcel. Plaintiff averred that when the township approved the plans for his residence, the township agreed that plaintiff's parcel included the Disputed Property.

According to plaintiff, since he purchased the land, he believed he owned the Disputed Property and always treated the Disputed Property as part of his own parcel, including by parking vehicles on the driveway and maintaining the lawn, landscaping, garage, and driveway that were constructed on a portion of the Disputed Property. Plaintiff also averred that since 1997, he had engaged in "many discussions" with previous owners of the neighboring parcel at issue,[3] "owners' attorneys, real estate agents, and township officials and in every instance outrighted asserted absolute ownership" of the Disputed Property. Plaintiff believed his use of the Disputed Property was consistent with its function as a "side area setback" from the neighboring property. According to plaintiff's deposition, the person who owned the neighboring property told plaintiff in 1998 that the garage encroached on the neighboring property, and plaintiff responded, "Well, I have a mortgage survey that says differently."

Plaintiff testified in his deposition that before he owned his property, his predecessor in interest had "maintained this area pretty much in line with the power lines." Plaintiff indicated that he had continued to mow the lawn in that same area, hired landscapers to maintain that area, and resurfaced the driveway and turnaround area. This maintenance apparently included caring for trees and "clear[ing]" a ditch each year that was south of part of plaintiff's driveway between the driveway and the utility poles. According to plaintiff, the neighboring lot to the south was vacant, full of "[o]vergrown weeds," and used as dumping ground for excess dirt by other property owners. He indicated that nobody was using the neighboring property for any other purpose. Plaintiff testified that before the instant dispute developed, nobody else went on the Disputed Property "other than deer, ducks, pheasant," and he averred that no previous owner of the

---

[2] The record contains an affidavit completed by plaintiff in addition to his deposition testimony.

[3] As will subsequently be explained, defendants in the present action have owned this neighboring parcel since 2020.

neighboring property used the Disputed Property for any purpose. He admitted that he never posted "No Trespassing" or "No Hunting" signs. He also indicated that he never had an actual agreement with prior owners of the neighboring property to treat the powerlines as the boundary line. Plaintiff used the Disputed Property by parking vehicles in the turnaround and using a movable basketball hoop in the turnaround.

In 2020, defendants purchased the neighboring parcel to the south of plaintiff's property. According to Lijo's affidavit, the parcel was "vacant" and "in a wild and unkept state" at that time. Defendants obtained a survey of their property that showed that it included the Disputed Property, and stakes were placed along this boundary line. However, an addendum to the purchase agreement acknowledged that there was an unrecorded encroachment onto the property that defendants were purchasing, which was caused by an existing garage and asphalt along the northern property line. The addendum, and warranty deed, provided that the purchase was being made subject to these encroachments. After purchasing the property, defendants had the land cleared and hired contractors to build a house on the property. Lijo averred that "the contractor graded the Property and the Disputed Area and installed a retaining screen on our Property to prevent runoff of dirt, silt, or other material during construction." He further averred that the "retaining screen was built wholly within our Property," that "[w]e never informed anyone that we intended the retaining screen to be a fence line for our Property," and that plaintiff "never approached us claiming ownership of the Disputed Area" or otherwise excluded defendants or their contractors from the Disputed Property during construction of the home. According to Lijo, "We had no idea that [plaintiff] claimed the Disputed Area at all," and "Our contractors continued to maintain the Disputed Area during construction without interference from Vivona."

Plaintiff averred that at some point in 2020, defendants' real estate agent contacted him, and plaintiff "openly claimed ownership" of the Disputed Property. There was also evidence that plaintiff discussed the boundary line dispute with an attorney hired by defendants in 2021.

Lijo Anthony averred that he informed plaintiff at some point that he would not attempt to have plaintiff's garage removed or to prevent plaintiff from using the portion of the garage that encroached on defendant's property. Lijo claimed that plaintiff began to harass defendants by placing a Confederate flag on plaintiff's garage, facing defendants' property, and "calling the police and FBI on us for various reasons." Thus, defendants built a privacy fence along the property line at some point in August 2022; the fence is within the Disputed Property. As the fence was being built, plaintiff began posting signs on trees on the Disputed Property. According to Lijo, this was "the first time we were put on notice that Vivona claimed any rights to the Disputed Area."

According to plaintiff, at some point in August 2022, a "silt fence" that was installed during construction of defendant's home "started creeping" into plaintiff's lot and defendants put stakes in the Disputed Property. Plaintiff testified that defendants posted "No Trespassing" signs and claimed that they owned the Disputed Property. Plaintiff also testified that defendants removed part of plaintiff's driveway or turnaround. At some point, plaintiff called the police. Plaintiff averred that defendants' privacy fence denied his access to the Disputed Property, and he further stated that defendants cut down trees and performed other landscaping work on the Disputed Property.

Plaintiff initiated the present action claiming in his second amended complaint that from at least 2000 until defendants constructed their fence and removed part of the driveway in 2022, plaintiff had openly and continuously claimed ownership of the Disputed Property by maintaining the lawn and landscaping and by parking vehicles on the driveway within the Disputed Property. Plaintiff maintained that he was the only person to make use of the Disputed Property during that time. In his second amended complaint, plaintiff sought title to the Disputed Property and asserted counts designated as adverse possession, acquiescence, quiet title, wrongful ejectment, trespass, and declaratory relief.

The parties filed competing motions for summary disposition. Plaintiff argued that he was entitled to summary disposition under MCR 2.116(C)(10) because there was no genuine issue of material fact that he had established title to the property by adverse possession before defendants purchased the neighboring property. Plaintiff maintained that his use was open and notorious, consistent with the purposes of a side yard. He also maintained that defendants and previous owners of defendants' property had acquiesced to plaintiff's position on the boundary line until defendants erected their privacy fence. Thus, plaintiff argued that he was also entitled to judgment quieting title in his favor and judgment that defendants had wrongfully ejected him and trespassed on his property.

Defendants argued that they were entitled to summary disposition under MCR 2.116(C)(10) because plaintiff had admitted he could not establish the exclusivity or hostility elements of his adverse possession claim, there was no evidence of the necessary express or implied agreement to a new boundary line for purposes of the acquiescence claim, plaintiff's inability to prove his adverse possession and acquiescence claims was "beyond factual dispute," and plaintiff thus could also not establish his quiet title or trespass claims. Defendants argued that plaintiff admitted that he never posted signs on the Disputed Property, never attempted to demarcate it by a fence or other barrier, never took any other actions to exclude others from the Disputed Property, that mowing the grass and passively maintaining the landscaping were insufficient to put others on notice that plaintiff claimed exclusive possession of the Disputed Property as his own under claim of right, and that plaintiff therefore could not—as a matter of law—establish that his use was exclusive or hostile as required to succeed on his adverse possession claim. Defendants also argued that summary disposition was proper under MCR 2.116(C)(8) for the wrongful ejectment claim because plaintiff's pleadings established that the dispute should only be resolved through a quiet title action.

The trial court dispensed with oral argument on the motions, granted plaintiff's motion for summary disposition, and denied defendants' motion. The court ruled as follows:

> The Court has thoroughly considered the arguments of the parties and reviewed the extensive exhibits provided. The Plaintiff has met his burden on every element on every claim plead for the reasons argued by the Plaintiff. The Court concludes that the Plaintiff adversely possessed the Power Line Section [Disputed Property] prior to the Defendants purchasing their property and that adverse possession was established for certain by 2015 and possibly as early as 2012. Plaintiff has also established acquiescence for the requisite l5-year statutory period. Plaintiffs interest in the Power Line Section is superior to all Defendants' interest. Further, the Court concludes that Plaintiff was wrongfully ejected from his property

-4-

pursuant to MCL 600.2918 which entitles him to three times his actual damages. The Defendants trespassed and improperly removed a portion of the Plaintiffs driveway and encroached by erecting a fence and a shed. The Defendants shall be responsible for the cost of restoring and repairing the driveway, removal of their fence, and removal of any portion of the shed that encroaches if the shed still stands.

IT IS ORDERED that judgment of legal title to the Power Line Section vests in Plaintiff and that Defendants shall remove all encroachments and restore Plaintiffs driveway by July 1, 2024. If a hearing on damages is necessary, Plaintiff shall contact the Court to schedule same.

This appeal followed.

## II. ANALYSIS

### A. ADVERSE POSSESSION

On appeal, defendants challenge the trial court's ruling granting summary disposition in favor of plaintiff on his adverse possession claim.

"Actions to quiet title are equitable in nature, and equitable rulings are reviewed de novo." *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). This Court also reviews a trial court's summary disposition ruling de novo. *Id.* "When reviewing a decision on a motion for summary disposition under MCR 2.116(C)(10), this Court must consider the documentary evidence presented to the trial court in the light most favorable to the nonmoving party." *Mulcahy v Verhines*, 276 Mich App 693, 699; 742 NW2d 393 (2007) (quotation marks and citations omitted). "A trial court has properly granted a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Id.* (quotation marks and citations omitted). "A genuine issue of material fact exists when the record, viewed in the light most favorable to the nonmoving party, leaves open an issue upon which reasonable minds might differ." *MacDonald v Ottawa Co*, 335 Mich App 618, 622; 967 NW2d 919 (2020) (quotation marks and citation omitted).

Defendants argue on appeal that the trial court erred by concluding that plaintiff had established title as a matter of law to the Disputed Property through adverse possession before defendants purchased their real property. Defendants maintain that plaintiff admitted that he never used the disputed area "exclusively" as required to establish title by adverse possession. Defendants also contend that mowing the grass and minimal landscape maintenance on the Disputed Property, without more, was insufficient to demonstrate the requisite "hostility."

"It is elementary that the burden of proving adverse possession rests upon the party who alleges it; strict construction of the doctrine is applied, and such possession must rest upon clear and positive proof, not inference." *Burns v Foster*, 348 Mich 8, 14; 81 NW2d 386 (1957). "To establish adverse possession, the party claiming it must show clear and cogent proof of possession that is actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right." *Beach v Twp of Lima*, 489 Mich 99,

106; 802 NW2d 1 (2011) (quotation marks and citation omitted); see also MCL 600.5801. As this Court has explained:

> These are not arbitrary requirements, but the logical consequence of someone claiming by adverse possession having the burden of proving that the statute of limitations has expired. To claim by adverse possession, one must show that the property owner of record has had a cause of action for recovery of the land for more than the statutory period. A cause of action does not accrue until the property owner of record has been disseised of the land. MCL 600.5829. Disseisin occurs when the true owner is deprived of possession or displaced by someone exercising the powers and privileges of ownership. [*Houston*, 335 Mich App at 558-559 (quotation marks and citation omitted).]

"Michigan courts have followed the general rule that the expiration of the period of limitation terminates the title of those who slept on their rights and vests title in the party claiming adverse possession." *Beach*, 489 Mich at 106 n 18 (quotation marks and citation omitted). "When the elements of adverse possession have been met, the law presumes that the true owner, by his acquiescence, has granted the land, or interest to the land, so held adversely." *Marlette Auto Wash, LLC v Van Dyke SC Props, LLC*, 501 Mich 192, 202; 912 NW2d 161 (2018) (quotation marks and citations omitted). Moreover,

> [a]fter the statutory period ends, the record owner's title is extinguished and the adverse possessor acquires "legal title" to the property. Acquisition of title in this manner includes "the right to defend the possession and to protect the property against the trespass of all others." However, the title acquired by adverse possession is neither record title nor marketable title until the adverse possessor files a lawsuit and obtains a judicial decree. Thus, until an adverse possessor obtains the necessary judicial decree, there is no record of the adverse possessor's ownership interest to verify whether the possessor actually satisfied the elements of adverse possession. [*Beach*, 489 Mich at 106-107 (citations omitted).]

Nonetheless, "[t]itle by adverse possession is gained when the period of limitations expires, not when legal action quieting title to the property is brought." *Marlette Auto Wash*, 501 Mich at 196.

"Determination of what acts or uses are sufficient to constitute adverse possession depends upon the facts in each case and to a large extent upon the character of the premises." *Burns*, 348 Mich at 14. " 'Possession' refers to an exercise of dominion over the property, and there may be degrees even in the exclusiveness of the exercise of ownership." *Jonkers v Summit Twp*, 278 Mich App 263, 274-275; 747 NW2d 901 (2008) (some quotation marks and citation omitted). "[O]ccupation in common with the public is not exclusive possession, neither is possession concurrent with that of the true owner ever exclusive." *Id*. at 274 (quotation marks and citation omitted). "The term 'hostile' as employed in the law of adverse possession is a term of art and does not imply ill will; rather, hostile use is that which is inconsistent with the right of the owner, without permission asked or given, and which would entitle the owner to a cause of action against the intruder." *Wengel v Wengel*, 270 Mich App 86, 92-93; 714 NW2d 371 (2006) (quotation marks and citation omitted).

Here, defendants contend that plaintiff could not establish the exclusivity or hostility elements of his adverse possession claim. Regarding the exclusivity element, defendants argue that plaintiff admitted that he did not take any steps to exclude others from the Disputed Property and never actually excluded anyone from the Disputed Property. Defendants cite plaintiff's admissions that he never posted signs such as "No Trespassing" or "No Hunting" signs and never installed a fence or other barrier demarcating the Disputed Property as part of his property. Regarding the hostility element, defendants argue that mowing the grass and "passively" maintaining the landscaping on the Disputed Property were insufficient acts of hostile possession as a matter of law to put others on notice of plaintiff's claim of ownership over the Disputed Property.

Thus, as the issue has been presented to this Court by defendants, we have been asked to resolve the purely legal question whether the undisputed facts that plaintiff mowed the grass, cleared weeds, and performed minimal tree maintenance on the Disputed Property, while other people never attempted to use the Disputed Property for any purpose, are insufficient as a matter of law to constituted the exclusive and hostile use necessary to obtain title by adverse possession.

Defendants do not dispute the evidence that plaintiff mowed the grass up to the power lines forming the southern boundary of the Disputed Property, nor do defendants dispute the evidence that plaintiff maintained trees and cleared weeds on the Disputed Property, even if such maintenance required relatively little effort. There was also evidence, which defendants do not dispute, that part of plaintiff's garage and driveway was situated on the Disputed Property and that plaintiff parked vehicles played basketball in that driveway. In contrast, the undisputed evidence reflects that the neighboring property was vacant, "wild," and overgrown with weeds and brush before defendants purchased the property in 2020. The undisputed evidence also demonstrates that the previous owners of defendants' property did not use the Disputed Property for any purpose.

Considering the character of these two lots before defendants purchased their property, *Burns*, 348 Mich at 14, the undisputed facts demonstrate that plaintiff used the Disputed Property in a manner consistent with making it appear to be part of his own yard while the neighboring property was left in a contrasting state of neglect. On this record, we conclude that plaintiff's use of the Disputed Property constituted an exercise of dominion over the property, and the fact that nobody else attempted to compete with plaintiff for use of that property does not demonstrate that plaintiff occupied the property in common with others. *Jonkers*, 278 Mich App at 274-275. Instead, the undisputed record evidence supports plaintiff's claim that the actual owners of the Disputed Property slept on their rights such that title could vest in plaintiff. *Beach*, 489 Mich at 106 n 18; *Marlette Auto Wash*, 501 Mich at 202. Moreover, plaintiff's use of the Disputed Property as part of his own parcel was inconsistent with the right of the true owner, and defendants do not claim that plaintiff sought or obtained permission from any prior owner to use the Disputed Property. Thus, the element of "hostile" use was also satisfied. *Wengel*, 270 Mich App at 92-93.

Because defendant does not challenge plaintiff's evidence that he used the Disputed Property as he claimed since at least 2000, the statutory period had expired and title to the Disputed Property had vested in plaintiff by 2015, well before defendants purchased their property. *Beach*, 489 Mich at 106 & n 18; *Marlette Auto Wash*, 501 Mich at 196. Accordingly, defendants' claims about their attempts to use the Disputed Property after 2020 do not serve to negate plaintiff's earlier

acquired title to the Disputed Property; plaintiff had already acquired the right to protect the Disputed Property from trespass. *Beach*, 489 Mich at 106-107.

Our conclusion is supported by this Court's decision in *Houston*, 335 Mich App 545. In that case, the parties owned neighboring properties in a residential area. *Id*. at 549. "A retaining wall and a strip of land landscaped with a garden, trees, and shrubs located on [the plaintiff's] side of the retaining wall [were] both situated on [the defendant's] land according to legal descriptions and surveys," and the parties had a boundary dispute involving the ownership of the strip of landscaped land bordering the retaining wall. *Id*. The plaintiff brought a quiet-title action alleging, in relevant part, that she had obtained title to the disputed strip of land through adverse possession because "her predecessor parents had cared for and tended the strip of land up to the retaining wall for more than 15 years and . . . she also had maintained the area." *Id*. This Court held that the trial court had not erred by granting summary disposition in favor of the plaintiff on her claim of adverse possession. *Id*. at 567. Relevant to the element of hostility, we explained:

> And the fact that the [plaintiff's family] maintained the disputed strip of land for 33 years constituted evidence that they intended to hold to the visible, recognizable retaining wall as the boundary. In the context of the (C)(10) motions, [the plaintiff] satisfied her obligation to submit documentary evidence to show hostility or, in this case, intent to hold to a visible, recognizable boundary . . . and defendants failed to counter that evidence with their own documentary evidence showing a lack of hostility or absence of such intent, which was necessary to create a genuine issue of material fact . . . . Accordingly, [the plaintiff] established as a matter of law that her parents had intended to hold to a visible, recognizable boundary, thereby proving hostility. [*Id*. at 565.]

Here, like the plaintiff in *Houston*, plaintiff produced evidence that he maintained the grass and landscaping of the Disputed Property up to the power lines on the southern boundary, inconsistent with the rights of the true owner. Plaintiff thereby produced evidence of exclusive and hostile use of the Disputed Property that defendants failed to rebut; the trial court thus did not err in concluding that these elements of adverse possession were satisfied. *Houston*, 335 Mich App at 559 ("[W]here a person possesses the land of another intending to hold to a particular recognizable boundary regardless of the true boundary line, the possession is hostile and adverse possession may be established."); see also *Jonkers*, 278 Mich App at 274-275.

Moreover, contrary to defendants' arguments, it is not necessary to post signs or fence the area to establish title by adverse possession. Our Supreme Court has explained:

> The established rule of this court is, It is sufficient if the acts of ownership are of such a character as to openly and publicly indicate an assumed control or use such as are consistent with the character of the premises in question. . . . . The land need not be fenced. Buildings are not necessary. Where the possession claimed was by cutting grass and pasturing cattle each year during the season, and planting trees, it was held to be evidence of a practically continuous, exclusive, and hostile possession. Openly and notoriously claiming and using land in the only way it could be used without fencing or cultivation was held to establish adverse

possession. [*Monroe v Rawlings*, 331 Mich 49, 52; 49 NW2d 55 (1951) (quotation marks and citations omitted).]

Accordingly, defendants have not demonstrated that the trial court erred by concluding that plaintiff had obtained title to the Disputed Property through adverse possession. In light of this conclusion, we need not address defendants' arguments regarding the doctrine of acquiescence because even were we to assume without deciding that plaintiff could not establish his claim to the Disputed Property through acquiescence, plaintiff has nonetheless acquired title by adverse possession. See *Monroe*, 331 Mich at 50 ("We think defendants established title by adverse possession. Accordingly, we need not pass on the other questions.").

## B. RES JUDICATA

Finally, defendants argue that this action was barred by res judicata. "The applicability of res judicata is a question of law that is reviewed de novo on appeal." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 10; 672 NW2d 351 (2003).

Defendants contend that res judicata barred the instant action, which was filed on February 15, 2023, because plaintiff had previously filed a different lawsuit against defendants on June 16, 2022 (the 2022 action) that alleged claims of defamation and intentional infliction of emotional distress (IIED). Defendants argue that the allegations in the 2022 action specifically referred to the boundary line dispute between that parties and that plaintiff therefore could have litigated his adverse possession claim in the 2022 action such that he was precluded from litigating that adverse possession claim in the present action.

The defamation and IIED allegations in the complaint for the 2022 action concerned a statement that Mayola made in an online social media post. In that complaint, plaintiff alleged that Mayola had posted a comment on May 20, 2022, mentioning the name of plaintiff's business and asserting that plaintiff was racist because he had placed a Confederate flag on the side of his garage facing defendants' property. Plaintiff alleged that the statement was false and was made with malice to retaliate against plaintiff for issues involving the parties' disagreements over the location of the boundary line between their properties and problems that defendants had encountered with the police and city regarding the construction of their home and for which they blamed plaintiff. Plaintiff further alleged that the statement was defamatory and constituted IIED. The 2022 action was eventually dismissed when the trial court in that case granted defendant's motion for summary disposition because the court concluded that the post only amounted to non-actionable "name calling" with no evidence of actual malice. The trial court's order dismissing the 2022 action was entered after the present action was filed.

"Courts use the doctrine of res judicata to prevent multiple suits litigating the same cause of action." *C-Spine Orthopedics, PLLC v Progressive Mich Ins Co*, 346 Mich App 197, 203; 12 NW3d 20 (2023). "Res judicata requires that (1) the prior action was decided on the merits, (2) the decree in the prior action was a final decision, (3) the matter contested in the second case was or could have been resolved in the first, and (4) both actions involved the same parties or their privies." *Peterson Novelties*, 259 Mich App at 10. " 'Michigan courts have broadly applied the doctrine of res judicata' " and " 'have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have

raised but did not.' " *C-Spine*, 346 Mich App at 203, quoting *Dart v Dart*, 460 Mich 573, 586-587; 597 NW2d 82 (1999). "Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical." *Dart*, 460 Mich at 586. " 'If the same facts or evidence would sustain both, the two actions are the same for the purpose of res judicata.' " *C-Spine*, 346 Mich App at 203, quoting *Peterson Novelties*, 259 Mich App at 11.

Here, plaintiff's 2022 action involved claims of defamation and IIED. "The elements of a cause of action for defamation are (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by the publication (defamation per quod)." *Burden v Elias Bros Big Boy Restaurants*, 240 Mich App 723, 726; 613 NW2d 378 (2000). "To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. The conduct complained of must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004) (quotation marks and citations omitted).

Both the defamation and IIED claims were based on the nature of *statements* in Mayola's social media post allegedly accusing plaintiff of being racist. Although the ongoing disagreements between the parties about the property line may have provided context or motivation for the alleged defamatory and outrageous statements, proof of the actual location of the boundary line was not a necessary part of plaintiff's defamation and IIED claims; the statement at issue did not concern the location of the property line. In contrast, the present action involved determining the actual property line and required plaintiff to show "possession" of the Disputed Property that was "actual, visible, open, notorious, exclusive, continuous and uninterrupted for the statutory period of 15 years, hostile and under cover of claim of right." *Beach*, 489 Mich at 106 (quotation marks and citation omitted). The allegedly defamatory social media posts were not relevant to the necessary adverse possession showing. Because the present action and the 2022 action could not have been sustained by "the same facts or evidence," the two actions were not the same for purposes of res judicata and the present action thus was not precluded by the 2022 action. *C-Spine*, 346 Mich App at 203 (quotation marks and citation omitted).

Affirmed. No costs are awarded.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Mariam S. Bazzi